## RAILROAD COMMISSION OF TEXAS ET AL. *v.* PULLMAN COMPANY ET AL.

No. 283. Argued February 4, 1941.—Decided March 3, 1941.

---

*Mr. Cecil A. Morgan* for M. B. Cunningham et al.; and *Mr. Cecil C. Rotsch,* Assistant Attorney General of Texas, with whom *Messrs. Gerald C. Mann,* Attorney General, *Glenn R. Lewis,* and *Lee Shoptaw,* Assistant Attorneys General, were on the brief, for the Railroad Commission et al., appellants.

*Mr. Ireland Graves,* with whom *Messrs. Lowell M. Greenlaw, Herbert S. Anderson, Charles L. Black, Claude Pollard,* and *F. B. Walker* were on the brief, for appellees.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

In those sections of Texas where the local passenger traffic is slight, trains carry but one sleeping car. These trains, unlike trains having two or more sleepers, are without a Pullman conductor; the sleeper is in charge of a porter who is subject to the train conductor's control. As is well known, porters on Pullmans are colored and conductors are white. Addressing itself to this situation, the Texas Railroad Commission after due hearing ordered that "no sleeping car shall be operated on any line of railroad in the State of Texas . . . unless such

cars are continuously in the charge of an employee . . . having the rank and position of Pullman conductor." Thereupon, the Pullman Company and the railroads affected brought this action in a federal district court to enjoin the Commission's order. Pullman porters were permitted to intervene as complainants, and Pullman conductors entered the litigation in support of the order. Three judges having been convened, Judicial Code, § 266, as amended, 28 U. S. C. § 380, the court enjoined enforcement of the order. From this decree, the case came here directly. Judicial Code, § 238, as amended, 28 U. S. C. § 345.

The Pullman Company and the railroads assailed the order as unauthorized by Texas law as well as violative of the Equal Protection, the Due Process and the Commerce Clauses of the Constitution. The intervening porters adopted these objections but mainly objected to the order as a discrimination against Negroes in violation of the Fourteenth Amendment.

The complaint of the Pullman porters undoubtedly tendered a substantial constitutional issue. It is more than substantial. It touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open. Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy. It is therefore our duty to turn to a consideration of questions under Texas law.

The Commission found justification for its order in a Texas statute which we quote in the margin.[1] It is com-

---

[1] Vernon's Anno. Texas Civil Statutes, Article 6445:

"Power and authority are hereby conferred upon the Railroad Commission of Texas over all railroads, and suburban, belt and terminal railroads, and over all public wharves, docks, piers, elevators, warehouses, sheds, tracks and other property used in connection therewith in this State, and over all persons, associations

mon ground that if the order is within the Commission's authority its subject matter must be included in the Commission's power to prevent "unjust discrimination . . . and to prevent any and all other abuses" in the conduct of railroads. Whether arrangements pertaining to the staffs of Pullman cars are covered by the Texas concept of "discrimination" is far from clear. What practices of the railroads may be deemed to be "abuses" subject to the Commission's correction is equally doubtful. Reading the Texas statutes and the Texas decisions as outsiders without special competence in Texas law, we would have little confidence in our independent judgment regarding the application of that law to the present situation. The lower court did deny that the Texas statutes sustained the Commission's assertion of power. And this represents the view of an able and experienced circuit judge of the circuit which includes Texas and of two capable district judges trained in Texas law. Had we or they no choice in the matter but to decide what is the law of the state, we should hesitate long before rejecting their forecast of Texas law. But no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination. The last word on the meaning of Article 6445 of the

---

and corporations, private or municipal, owning or operating such railroad, wharf, dock, pier, elevator, warehouse, shed, track or other property to fix, and it is hereby made the duty of the said Commission to adopt all necessary rates, charges and regulations, to govern and regulate such railroads, persons, associations and corporations, and to correct abuses and prevent unjust discrimination in the rates, charges and tolls of such railroads, persons, associations and corporations, and to fix division of rates, charges and regulations between railroads and other utilities and common carriers where a division is proper and correct, and to prevent any and all other abuses in the conduct of their business and to do and perform such other duties and details in connection therewith as may be provided by law."

Texas Civil Statutes, and therefore the last word on the statutory authority of the Railroad Commission in this case, belongs neither to us nor to the district court but to the supreme court of Texas. In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. *Glenn* v. *Field Packing Co.,* 290 U. S. 177; *Lee* v. *Bickell,* 292 U. S. 415. The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.

An appeal to the chancellor, as we had occasion to recall only the other day, is an appeal to the "exercise of the sound discretion, which guides the determination of courts of equity." *Beal* v. *Missouri Pacific R. Co., ante,* p. 45. The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction. There have been as many and as variegated applications of this supple principle as the situations that have brought it into play. See, for modern instances, *Beasley* v. *Texas & Pacific Ry. Co.,* 191 U. S. 492; *Harrisonville* v. *Dickey Clay Co.,* 289 U. S. 334; *United States* v. *Dern,* 289 U. S. 352. Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, whether the policy relates to the enforcement of the criminal law, *Fenner* v. *Boykin,* 271 U. S. 240; *Spielman Motor Co.* v. *Dodge,* 295 U. S. 89; or the administration of a specialized scheme for liquidating embarrassed business enterprises, *Pennsylvania* v. *Williams,* 294 U. S. 176; or the final authority of a state court to interpret doubtful regulatory laws of the state, *Gilchrist* v. *Interborough Co.,* 279 U. S. 159;

cf. *Hawks* v. *Hamill*, 288 U. S. 52, 61. These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, "exercising a wise discretion," restrain their authority because of "scrupulous regard for the rightful independence of the state governments" and for the smooth working of the federal judiciary. See *Cavanaugh* v. *Looney*, 248 U. S. 453, 457; *Di Giovanni* v. *Camden Ins. Assn.*, 296 U. S. 64, 73. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers. Compare 37 Stat. 1013; Judicial Code, § 24 (1), as amended, 28 U. S. C. § 41 (1); 47 Stat. 70, 29 U. S. C. §§ 101–15.

Regard for these important considerations of policy in the administration of federal equity jurisdiction is decisive here. If there was no warrant in state law for the Commission's assumption of authority there is an end of the litigation; the constitutional issue does not arise. The law of Texas appears to furnish easy and ample means for determining the Commission's authority. Article 6453 of the Texas Civil Statutes gives a review of such an order in the state courts. Or, if there are difficulties in the way of this procedure of which we have not been apprised, the issue of state law may be settled by appropriate action on the part of the State to enforce obedience to the order. *Beal* v. *Missouri Pacific R. Co., supra;* Article 6476, Texas Civil Statutes. In the absence of any showing that these obvious methods for securing a definitive ruling in the state courts cannot be pursued with full protection of the constitutional claim, the district court should exercise its wise discretion by staying its hands. Compare *Thompson* v. *Magnolia Co.*, 309 U. S. 478.

We therefore remand the cause to the district court, with directions to retain the bill pending a determination

502

of proceedings, to be brought with reasonable prompt-
ness, in the state court in conformity with this opinion.
Compare *Atlas Ins. Co.* v. *Southern, Inc.*, 306 U. S. 563,
573, and cases cited.

*Reversed.*

MR. JUSTICE ROBERTS took no part in the consideration
or decision of this case.