227 F.2d 162
 SNYDER'S DRUG STORES, Inc., and Marquette Drug Company, Appellants,
v.
Angus H. TAYLOR, Harold H. Carpenter, Harry W. Carlsen, Ivan E. Peterson, John S. Harms, and Frank W. Moudry, Appellees.
ELKON Inc., and Virgil M. Elliott, Appellants,
v.
Angus H. TAYLOR, Harold H. Carpenter, Harry W. Carlsen, Ivan E. Peterson, John S. Harms, and Frank W. Moudry, Appellees.
 No. 15295.
 No. 15296.
 United States Court of Appeals Eighth Circuit.
 November 15, 1955.
 Rehearing Denied December 22, 1955.
 
 Harry H. Peterson, Minneapolis, Minn. (Roy A. MacDonald, St. Paul, Minn., with him on the brief), for appellants.
 William W. Essling, Special Asst. Atty. Gen., of Minnesota (Miles Lord, Atty. Gen., with him on the brief), for appellees.
 Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.
 JOHNSEN, Circuit Judge.
 
 
 1
 These are suits by different drug-store operators — all citizens of the State of Minnesota — against the members and the executive secretary of the Minnesota State Board of Pharmacy. Both cases seek the same relief — a declaration of invalidity and the issuance of an injunction,[1] as to some regulations promulgated by the Board claimed to be violative of due process and equal protection under the Fourteenth Amendment, in their application to the situations and rights of the plaintiffs.
 
 
 2
 The District Court, by a single-judge order,[2] dismissed the suits, without prejudice, on motion of the defendants, and the plaintiffs have appealed.
 
 
 3
 The regulations would seem, on their contents and consequences, to present a substantial federal question of constitutional validity, if they are within the scope of the Board's state-authorized powers. By the regulations, the Board provided that it would not grant licenses for the operation of any pharmacies or drug stores, other than those already existing, except to individuals who were registered pharmacists in the State of Minnesota and to corporations which were owned and controlled by such pharmacists; that it would deny all applications "for licenses to conduct pharmacies or drug stores in open market places, super-stores, or super-markets, self-service stores and other similar establishments"; that it would "refuse to register or grant a license for any pharmacy which sells or proposes to sell therein any article of merchandise in a manner like or similar to the manner in which merchandise is sold in super-markets or other stores commonly known as self-service stores"; and that no pharmacist or other employee in a registered pharmacy should "sell to any person any drug to which such person has served himself."
 
 
 4
 The statutes from which the State Board of Pharmacy derives its powers, in their here pertinent provisions, Minn. S.A. §§ 151.06, 151.19, 151.20, authorize the Board to "regulate the practice of pharmacy"; to "regulate the sale of drugs, medicines, chemicals, and poisons"; to "regulate the quality of all drugs and medicines dispensed", under the standards of the U. S. pharmacopeia and national formulary; to "examine and register as pharmacists all applicants whom it shall deem qualified to be such"; to "suspend or revoke pharmacist or assistant pharmacist licenses issued by it", on citation, notice and hearing, for certain specified causes (not within the regulations here involved); to "perform such other duties and exercise such other powers as the provisions of the act may require"; and "for the purposes aforesaid * * * to make and publish * * * regulations not inconsistent herewith for carrying out and enforcing the provisions of [the statute]".
 
 
 5
 The complaints in the suits, beyond alleging that the regulations were violative of the Fourteenth Amendment, for arbitrariness, capriciousness, oppressiveness, and lack of sound relationship to the selling of drugs, to a regulating of the retail drug business as such, or to a protecting of the public health and safety, had also initially charged that the regulations were "not within the statutory authority possessed by the Minnesota State Board of Pharmacy, and that by reason thereof said regulations are illegal and unauthorized by law."
 
 
 6
 When, however, the defendants urged, upon the court's consideration of their motions to dismiss, that the question of the Board's power or right, under the Minnesota statutes, to adopt the regulations, was one which ought, in the proper respecting of state prerogative and the unnecessary uttering of federal opinion, on a matter of local public-nature, to be relegated to the Minnesota state courts for answer, the plaintiffs asked, and were given leave, to eliminate from the complaints the charge that the regulations were beyond the Board's statutory authority. But the elimination was not made on the basis that the charge was lacking in legal substantiality, and the plaintiffs have protectively made it clear, in a so-called "declaration of assertion of only federal constitutional questions", filed in connection with the appeals, that what they did was simply "for the purpose of this case".
 
 
 7
 On what the plaintiffs thus had legally exposed and were undertaking to preserve for future purposes, the situation was in effect one where the District Court was being asked to make a hypothetical declaration in the circumstances, that a state deprivation of due process and equal protection under the Fourteenth Amendment would exist, if the fact should be that the Board was possessed of the power or right under the Minnesota statutes to promulgate the regulations — a holding for which there could be no need, and in which a federal court ought not to engage, if the Board had acted beyond its granted authority. As said by the Supreme Court, in Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971, "If there was no warrant in state law for the Commission's assumption of authority there is an end of the litigation; the constitutional issue does not arise."
 
 
 8
 While the plaintiffs had withdrawn, as a matter of requested relief in the present suits, the charge that the Board, in promulgating the regulations, had exceeded its statutory powers, the question was, as noted, nevertheless one which they had initially formidably urged; which they had not legally relinquished as a basis for subsequent attack, but merely tactically sought to put in a judicial vacuum for purposes of the immediate case; and which, from the language of the statute and the likely relation of the authority granted the Board to the holding and import of Louis K. Liggett Co. v. Baldridge, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204,[3] the court could properly regard as constituting one of such legal substantiality and probable dispositiveness, that the constitutional issue might prove to be without any real legal existence in the situation.
 
 
 9
 With no application for an interlocutory injunction being involved, and with these special and significant factors confronting, we think that the District Judge could preliminarily require, without calling for the designation of a three-judge court in the situation under 28 U.S.C.A. § 2284, that the plaintiffs get the question of the Board's statutory powers cleared out of the way by a Minnesota state court, so that their constitutional contention would be freed of its substantial legal shadows and contingency or would become dissolved. The existence of adequate process and procedure under Minnesota law, for this purpose, is admitted.)
 
 
 10
 Indeed, it would seem to us that in any case — where a federal court is asked to declare some regulation or order of a state administrative agency invalid as a constitutional violation on the part of the State; where there is an attempt by the plaintiff to avoid and reserve the question of whether the regulation or order is beyond the administrative agency's granted powers; where the court believes the question to be a legally substantial one in the particular situation; and especially when the field involved is one of local public-nature — the court, in order not to brand the State unnecessarily with constitutional violation, has the same right to require the plaintiff to permit the courts of the State to settle the question of delegated power that it recognizedly has where the plaintiff is directly charging in his complaint that a regulation or order is in excess of an administrative agency's granted powers. See e. g. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002.
 
 
 11
 However, in any such situation, if a substantial federal question can exist, and the jurisdiction of the court properly has been invoked in relation to the contention,[4] the court ordinarily is not entitled to make dismissal of the action, but should simply leave the proceeding pending, until there has been a reasonable opportunity for the plaintiff to have the state question answered. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971.
 
 
 12
 There also is another reason why the dismissal made in the present situation is not entitled to stand. Under 28 U.S.C.A. § 2284(5), a case which requires a three-judge court for any disposition of it on its merits, such as these suits were under 28 U.S.C.A. § 2281, may not, we think, over the objection of the plaintiff, be dismissed by a single judge. The statute expressly provides that "A single judge shall not * * * dismiss the action, or enter a summary or final judgment." We regard the unqualified term "dismiss" as having application to both a dismissal without prejudice and a dismissal with prejudice.
 
 
 13
 The order of dismissal is accordingly vacated in each case, and the cause is remanded for the entry of an order in conformity with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The parties are in disagreement, and the record is in confusion, on whether the plaintiffs had abandoned their request for an injunction, but the expressions of the district judge, during the proceedings had and on the disposition made, indicate that he treated the complaints as having continued to present a request for an injunction, as well as for a declaratory judgment. We accept that view here, for purposes of the appeals
 
 
 [2]
 No three-judge court, under 28 U.S.C.A. § 2284, was ever designated in the situation
 
 
 [3]
 In the Liggett case, the Supreme Court struck down a state statute, as violative of the Fourteenth Amendment, which forbade any corporation to own a pharmacy or drug store in addition to those owned at the time of the enactment, unless all of its stockholders were licensed pharmacists
 
 
 [4]
 Jurisdiction here rested upon the provisions of 28 U.S.C.A. § 1331, that "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."