**Jadean SIEREVELD, an infant by her mother Eula SIEREVELD, as next friend, et al., Plaintiffs,**

v.

**Peter CONN, Cabinet for Human Resources, Frankfort, Kentucky, et al., Defendants.**

**Civ. A. No. 77–29.**

United States District Court,
E.D. Kentucky,
Covington Division.

Feb. 23, 1983.

Richard Cullison, Northern Kentucky Legal Aid Society, Inc., Covington, Ky., for plaintiffs.

Paul F. Fauri, Ann T. Hunsaker, Dept. for Human Resources, Frankfort, Ky., for defendants.

## OPINION AND ORDER

BERTELSMAN, District Judge.

The main issue in this case is whether the practice of the Kentucky Cabinet for Human Resources of removing children who have been committed to it from the homes of their natural parents violates constitutional due process where the Cabinet pro-

vides no standards limiting its discretion, no advance notice to the family of the removal and no opportunity to be heard. Also, to the extent it authorizes such practices, the constitutionality of section 208.430(2) of Kentucky Revised Statutes must be resolved.

## CHR'S REMOVAL PRACTICES

Under Kentucky law, children who have been found to be dependent or neglected are sometimes committed to the Cabinet for Human Resources (hereinafter CHR).[1] Ky. Rev.Stat. §§ 208.020; 199.011(5), (6); 208.-200 (Baldwin's 1982). Sometimes a child who has been committed to CHR is placed in the home of his or her natural parents under CHR supervision. At other times, CHR places the child in some other custodial situation such as in a group home or in foster care placement. Frequently thereafter, CHR places the committed child in the home of his or her natural parents with continuing CHR supervision. Until an injunction was issued in this case, CHR's practice was to remove a committed child from the home of the natural parent, if the social worker assigned to the case and his or her supervisor determined that it was advisable to do so. CHR had no standards governing social worker discretion in arriving at this decision; no written notice of the reasons for the removal was afforded the family prior to the removal; and no pre-removal or post-removal hearing was provided to determine whether removal of the child was an appropriate course of action.

CHR's authority for this type of removal was ostensibly under the auspices of section 208.430(2) of Kentucky Revised Statutes, which provides:

> Unless the child has been discharged from commitment, or the Court has specifically ordered otherwise, any disposition of a child made under this section may at any time during the period of his commitment be changed and other disposition made in accordance with the provision of this section.

The defendants' interpretation of this statute was that CHR was free to remove children committed to it from the homes of their natural parents without reference to standards and without providing notice and a hearing for the family. It is not disputed by the parties that the defendants were acting in good faith at all times.

## FACTUAL SUMMARY

Plaintiff Jadean Siereveld was found to be a dependent child and was committed to CHR pursuant to an order of the Juvenile Court, Campbell County, Kentucky, on June 5, 1975. At that time she was fourteen (14) years old. The commitment was to last for an indeterminate period of time not to exceed her attaining twenty-one years of age. Following the commitment, CHR placed Jadean in the home of her natural mother, plaintiff Eula Siereveld.

On February 17, 1977, CHR, through its local social service worker and her supervisor, removed Jadean from the home of her natural mother. The Plaintiffs did not receive any written notice of CHR's intention to remove the child nor of the reasons for the removal, but they did have one week's oral notice. The plaintiffs were never afforded an opportunity for any kind of administrative or judicial hearing relative to the merits of Jadean's removal from the home. Defendants' social workers who decided that Jadean should be removed from the home did not refer to any official standards or criteria to be utilized as guidelines in making this decision.

After Jadean was removed, she was placed in a group foster home. During her stay there, plaintiff Eula Siereveld had less access to and control over her daughter than when they had lived together, and Jadean was subjected to greater restrictions than she had been while living at home. This lawsuit was filed April 25, 1977, by Jadean and Eula Siereveld for themselves and as class representatives of similarly sit-

---

1. Throughout the pendency of this action the Department for Human Resources was the Kentucky agency charged with providing serv-ices for committed children. Recently, this office became a cabinet office and is now known as the Cabinet for Human Resources (CHR).

uated persons. By agreement of all concerned, plaintiff Jadean Siereveld was returned to her natural home and physical custody of her mother on May 27, 1977.

## CLASS ACTION, MOOTNESS, ABSTENTION

The court has heretofore certified this case to proceed as a class action under F.R.Civ.P. 23(b)(2). The class is comprised of those families who could be affected by this CHR policy and the pertinent statute.[2]

The court has also heretofore overruled a motion to dismiss this case for mootness after Jadean attained her majority. The court was of the opinion that the plaintiffs continued to have a sufficient stake in the outcome of the action to be adequate representatives of the class and that the class action status of this case insured the continued existence of a present controversy. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).

■ The court also declined to abstain from deciding the questions presented herein. This case does not involve *Younger* abstention, in which particularly delicate issues of comity are involved, in that an injunction curtailing state court proceedings is sought from a federal court. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Here, if abstention were appropriate at all, it would be *Pullman* abstention. *See Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This *Pullman* type of abstention comes into play when the interpretation of the state law being constitutionally challenged is ambiguous. Field, *Abstention and Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071 (1974).

■ As the foregoing article clearly points out, there are two requirements for the invocation of *Pullman* abstention: (1) The state law must be unclear, and (2) it must be subject to an interpretation that will avoid the federal constitutional question. Field, *supra,* at 1088; *Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965). The principal reason for this dual requirement is that federal courts are primarily responsible for interpreting federal law.

■ It is an insufficient reason for abstention, nevertheless, that a federal court might, as a matter of comity, wish to give the state courts the first opportunity to pass on the federal constitutionality of a state statute. Field, *supra,* at 1088 ff. Therefore, it being admitted that the state statute under consideration is neither unclear nor subject to an interpretation which would resolve the federal constitutional problem, the court determined that abstention was inappropriate in this case.

## DUE PROCESS

For reasons more fully set out below, on May 19, 1981, this court ruled that section 208.430(2) of Kentucky Revised Statutes is unconstitutional to the extent that it permits CHR to remove committed children from the physical custody of their natural parents without delineating standards for such removal and without affording the parents and children any prior written notice and prior opportunity for a hearing. The statute is violative of the fourteenth amendment to the United States Constitution in that it deprives the parents and children of their rights to liberty and family

---

**2.** The class certification order, filed November 3, 1980, indicated the class was comprised of these members:

(a) All parents who have had their natural children committed to the Kentucky Department for Human Resources as dependent or neglected, and who, after having said children placed in their homes, have had in the past or will have in the future, said children removed from their physical custody by the Department for Human Resources or its employees without first affording parents and children written notice of the removal, and without establishing standards to limit discretion regarding such removal.

(b) The children of parents described in subsection (a) above.

integrity without due process of law. Similarly, the defendants' acts, practices and policies of removing children under such circumstances are unconstitutional.

This court issued an injunction on May 19, 1981, prohibiting the defendants from removing committed children from the physical custody of their natural parents without first providing the family with written notice and an opportunity for a fair hearing. The defendants were further enjoined from removing children in this situation without first establishing written standards that would adequately advise parents and children of the circumstances under which removal might occur and that would properly limit CHR's discretion. The court permitted the defendants a reasonable time to submit recommendations to the court regarding the notices, procedures and standards. It is important to understand that this injunction did not apply in full force if a child were faced with a genuine emergency. If the social worker had probable cause to believe that it was necessary to remove the child because the child faced imminent death or serious bodily injury, then removal was authorized, although CHR was then required to provide the family with a prompt post-removal fair hearing.

In analyzing what process, if any, was due the plaintiffs in this case under the fourteenth amendment, the court employed the factors set out in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under the *Mathews* test, the first consideration is the type of private interest being affected. It has been recognized in numerous cases that family integrity is an interest of the very strongest type. *See,* e.g., *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Smith v. Organization of Foster Families for Equity and Reform,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). These cases derive from the same body of case law as *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Pierce v. Society of Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Although it sometimes permits the state to intrude into family matters, the Constitution of the United States quite properly recognizes that the right of a person to raise his or her own family is an interest of profound and fundamental importance.

The second factor to be considered under *Mathews* is the value of an individual hearing in the particular situation involved. Common sense indicates that factual disputes will occur frequently concerning the quality of parental care. For example, authorities might discover that a child is not attending school. Upon further investigation, however, it may be revealed that there is some misunderstanding with the teacher and that the parents are not really culpable. Perhaps the parents are facing a financial crisis of a temporary nature, or perhaps the parent and a particular social worker have a personality conflict that is creating a problem. The logic of providing some form of a hearing in such situations, where one may be deprived of an important interest, has been recognized by the United States Supreme Court in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), a school expulsion case.

The third factor employed in *Mathews* is the public burden as compared with the private benefit. The requirement of a due process hearing prior to the removal of a child in a non-emergency situation would impose no significant burden on the public. This is not a case, for example, where millions of dollars in welfare benefits might never be recovered if they are improperly paid. Moreover, the interest to be protected is a weighty one.

■ Tested by the principles set out in *Mathews,* section 208.430(2) of Kentucky Revised Statutes fails to provide due process of law. The previously cited cases dictate that families be afforded a pre-removal hearing in non-emergency cases and a prompt post-removal hearing following an emergency removal of a child. Thus, to the

extent that this statute would permit a removal without such protection, it is violative of the fourteenth amendment.

Similarly, the procedures employed by the defendants, which permit removal of children from the homes of their natural parents without proper findings of fact, are also unconstitutional. This principle was recognized in *Roe v. Conn,* 417 F.Supp. 769, 778 (M.D.Ala.1976), in which it was asserted that, "before intrusion into the affairs of the family is allowed, the State should have reliable evidence that a child is in need of protective care." *Id.* at 778. The court indicated that "this fact finding process, as a matter of basic fairness, should provide notice to the parents and child of the evidence . . . and provide them with an opportunity for rebuttal at a hearing before an impartial tribunal." *Id.* This does not mean, however, that a formal hearing before a judge is always required. In some situations, a judicial hearing may not be suitable. What the Constitution requires is a fundamentally fair hearing, which sometimes may be accomplished outside of the judicial context.

The statute and the practices employed by defendants pursuant to section 208.-430(2) are further unconstitutional for failing to include standards to govern the removal of children from their homes. Due process requires that there be some limits on social worker discretion in this regard and that the parents be given adequate notice of the circumstances under which their children may be removed. *See Alsager v. District Court of Polk County,* 406 F.Supp. 10 (S.D.Iowa 1975); *Roe v. Conn,* 417 F.Supp. 769 (M.D.Ala.1976). While this court has determined that there must be standards which are communicated to the family and which limit the discretion of the defendants, the court does not think it proper to implement its views. Therefore, defendants have been ordered to develop standards, relying upon their expertise, and to submit them to the court for approval.

Defendants and plaintiffs have joined in devising and have tendered a set of standards in a proposed consent decree which the court has reviewed carefully. In its order of November 5, 1982, the court tentatively approved the standards, the procedures providing for notice to families who have children committed to CHR, and the procedure providing for due process hearings, all of which were embodied in the proposed consent decree. This tentative approval was subject to notice of this proposed settlement to the class of persons affected in accordance with F.R.Civ.P. 23(e). The court ordered CHR to provide reasonable notice to the class of the proposed settlement. Accordingly, the class has been afforded an opportunity to comment on the proposed consent decree.

■ Since more than two months have elapsed and no objection has been received from any class member concerning the proposed consent decree, it is the ruling of the court that the consent decree fully addresses the concerns that the court had as to the constitutionality of the defendants' practices and of section 208.430(2). Therefore, the consent decree appended hereto is approved and the defendants are ordered to follow its terms.

### APPENDIX

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON
NO. 77029

| JADEEN SIEREVELD, ET AL. | PLAINTIFFS |

vs.

| PETER CONN, ET AL. | DEFENDANTS |

PROPOSED CONSENT DECREE REGARDING POLICY, STANDARDS AND PROCEDURES FOR REMOVAL OF COMMITTED JUVENILES FROM HOME OF PARENTS

### POLICY

When a child committed to the Department as dependent, neglected, or abused at some point afterwards is placed in the home of his/her parent(s), the child may not be removed by the Department except in accordance with the standards and procedures detailed below. In addition, the parents must be informed in writing at the time of

placement of the criteria that will be used to determine if removal is necessary.

PROCEDURE AND STANDARDS

1. At the time a committed child is placed in the home of its natural parent(s) by the Department, the parent(s) shall be informed of the conditions of the placement by letter (Exhibit A).

2. If the social worker believes that the committed child continues to be dependent, neglected, or abused, but immediate removal is unnecessary to protect the child from imminent death or serious injury, the casework situation and evidence will be reviewed with the Field Office Supervisor to make a determination to continue work with the family intact or to remove the child. There shall be documentation that the social worker, prior to the court hearing, made an effort to contact the parents to inform them of the specific problems that could lead to removal so that they have an opportunity to take corrective action; if the parents are unavailable or will not respond to attempts to communicate, documentation to this effect will meet the requirement.

3. If it appears that the child's health or welfare or physical, mental, or emotional condition is subjected to or threatened with real and substantial harm and there is not reasonably available an alternative less drastic than removal of the child from the home which would adequately protect the child, the DSS staff shall petition the court to review the case pursuant to KRS 208.205 in relation to the Department's intention to remove the child from the parent(s) home. If the court fails to find that the child's health or welfare or physical, mental, or emotional condition is subjected to or threatened with real and substantial harm, or recommends a less drastic alternative that is reasonably available, the child shall not be removed from the home.

4. The petition shall set forth the facts which constitute the need for removal and the time and place for a hearing to be held. The court is responsible for serving notice of the petition and hearing on the parent(s).

5. If a social worker finds a child unattended who is too young to take care of himself/herself, the social worker shall make reasonable efforts to arrange for an emergency caretaker in the child's home until the parent(s) returns or fails to return within a reasonable time. In the event no in-home caretaker is available for the child, the DSS shall request any appropriate law enforcement officer to take the child into protective custody during such emergency. If, after a reasonable time, it appears the child has been abandoned, the Department shall petition the District Court to review the case.

6. If there exist reasonable grounds to believe that the child is in danger of imminent death or serious injury or is being sexually abused and that the parent(s) is unable or unwilling to protect the child, the social worker may immediately remove the child prior to filing a petition for review. Within 72 hours after such removal, DSS shall cause a petition for review to be filed in District Court pursuant to KRS 208.205 with a request for an expeditious hearing thereon pursuant to paragraph 3.

7. The parents of a committed child placed at home must receive prior notice of all treatment planning conferences concerning the child. The notice must inform them of their right to be accompanied by a representative or legal counsel. If the court provides notice (through summons or other method) the social worker should contact the parents to be sure they received the notice and that the parent is aware of the right to be represented by counsel.

When a parent's whereabouts are unknown, notice may be mailed to the last known address of an adult who is a near relative.

DEFINITIONS

A. "Dependent child" means any child who is under improper care, control, or guardianship that is not due to the negligence of the parent or guardian, provided that the child is not an abused or neglected child.

B. "Abused or neglected child" means a child whose health or welfare is harmed or

EXHIBIT A

threatened with harm when his parent, guardian, or other person who has the permanent or temporary care, custody, or responsibility for the supervision of the child: inflicts or allows to be inflicted upon the child physical or mental injury to the child by other than accidental means; commits or allows to be committed an act of sexual abuse upon the child; willfully abandons or exploits such child; does not provide the child with adequate care and supervision, food, clothing and shelter, education, or medical care necessary for the child's well-being; provided, however, that a parent or guardian legitimately practicing his religious beliefs who thereby does not provide specified medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian. This exception, however, shall not preclude a court from ordering that medical services be provided to the child, where his health requires it.

C. "Physical harm" means physical pain or any impairment of physical condition.

D. "Emotional harm" means an injury to the mental or psychological capacity or emotional stability of a child as may be evidenced by a substantial and observable impairment in his ability to function within a normal range of performance and behavior with due regard to his culture, which injury may be directly attributable to the failure, refusal or incapacity of the parent or guardian to exercise a minimum degree of parental care and supervision toward the child.

E. "Serious injury" means physical injury which creates a substantial risk of death or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ.

HAVE SEEN AND APPROVED:

| /s/ Stanley A. Stratford | /s/ James Rogers |
| --- | --- |
| STANLEY A. STRATFORD<br>COUNSEL FOR<br>DEFENDANTS | JAMES ROGERS<br>COUNSEL FOR<br>PLAINTIFFS |
| /s/ Paul F. Fauri | /s/ Richard Cullison |
| PAUL F. FAURI<br>COUNSEL FOR<br>DEFENDANTS | RICHARD CULLISON<br>COUNSEL FOR<br>PLAINTIFFS |

_____
Name of Child

TO:    Parents

Your child, named above, has been committed to Cabinet For Human Resources by order of the District Court and Cabinet For Human Resources is placing your child in your custody as parents.

If the Cabinet receives information that your child has become dependent, abused or neglected during this home placement, but the Cabinet determines the situation is not an emergency requiring immediate removal of the child, an effort will be made to contact you and inform you of the situation that needs to be corrected. A child is considered abused, neglected or dependent when any of the following conditions exist:

a. The child is harmed or threatened with harm through physical or mental injury by other than accidental means.

b. The child is not provided appropriate food, medical care, shelter, clothing or education.

c. The child is caused or permitted to engage in any practice of danger to its health, safety, welfare or morals, including incest or sexual exploitation.

d. The child is abandoned.

In the event of an emergency which requires immediate removal of the child to prevent imminent death or serious bodily injury to the child, the Cabinet will remove the child without notice or Court order. After an emergency removal, the case will be reviewed by the District Court as soon as possible. For additional information, you may contact the Department For Social Services or the Social Worker named below.

Sincerely yours,