**Robert GREEN, Individually and on Behalf of all Others Similarly Situated, Plaintiffs,**

v.

**The BOARD OF the MUNICIPAL EMPLOYEES' OFFICERS' AND OFFICIALS' ANNUITY AND BENEFIT FUND OF CHICAGO; James Stack, Individually and Personally, Defendants.**

No. 94 C 1521.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 3, 1995.

Robert A. Holstein, Jewel Klein, Carol Gloor, Holstein, Mack & Klein, Chicago, IL, for plaintiff.

Frederick P. Heiss, Boyle & Heiss, Ltd., William A. Marovitz, Marovitz & Edelstein, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Robert Green brings this four count action, alleging violations of the due process clauses of the United States and Illinois Constitutions, as well as breach of statutory duty. Presently before the court are plaintiff's motion for class certification and defendants' motion to dismiss the complaint. For the reasons set forth below, we abstain pursuant to *Railroad Comm'n of*

*Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

## I. Background

Plaintiff Robert Green is a retired employee of the City of Chicago. As such, he receives a pension in the form of an annuity from the Municipal Employees', Officers' and Officials' Annuity and Benefit Fund of Chicago,[1] which was created pursuant to the Pension Code, 40 ILCS 5/8–101 *et seq.* Under the statute, 8½ percent of each payment of Green's salary was deducted for contribution to the Fund. *See* 40 ILCS 5/8–137, 8–174(a), 8–182.1.[2] For contribution purposes, the statute provides that the employee's "salary" is defined as the actual amount paid to the employee, excluding overtime. *See* 40 ILCS 5/8–117, 8–233, 8–235. In determining a retiree's pension, however, a different formula is used. The amount of the annuity received is based upon the "highest average annual salary" received by the retiree for any four consecutive years within the last ten years of service. "Annual salary" for purposes of annuity calculation, in turn, is defined in Section 8–233 of the Pension Code as follows:

> For minimum annuity purposes under Section 8–138, where a salary rate change occurs during the year, it shall be considered that the annual wage for any year is at such monthly, weekly, daily or hourly salary or wage rate as was applicable for the greater number of months, weeks, days or hours, respectively, in each year under consideration.

40 ILCS 5/8–233(b). In other words, generally speaking, if an employee receives a raise during the first half of a given year, the employee's annual salary for pension purposes is considered to be the amount that the employee would have received in that year if the raise had been in effect during the entire year. If, on the other hand, the employee receives a raise during the latter half of the year, the employee's annual salary for pension purposes is considered to be the amount that the employee would have received in that year had the raise never taken effect. Finally, if an employee receives two or more raises during the course of a year, the employee's annual salary for pension purposes is considered to be the amount the employee would have received in that year had that employee's salary been the salary amount that was applicable during the largest portion of the year.

Finally, Section 8–234 of the Pension Code provides:

> The total of salary deductions for employee contributions for annuity purposes to be considered for any 1 calendar year shall not exceed that produced by the application of the proper salary deduction rates to the highest annual salary considered for annuity purposes for such year.

40 ILCS 5/8–234. Green asserts that the amounts he paid to the Fund in certain years exceed the amount produced by "the application of the proper salary deduction rate to the highest annual salary considered for annuity purposes," in violation of Section 8–234. He therefore claims that he has been denied his property without due process of law, in violation of the due process clauses of the United States and Illinois Constitutions, and that defendants James Stack and the Board of the Fund have breached their statutory fiduciary duty. Green brings the present action both individually and on behalf of all others similarly situated.[3]

---

1. The Fund's executive director is defendant James Stack.

2. In addition, the City contributes an amount equal to 8 percent of each employees' salary to the Fund. *See* 40 ILCS 5/8–174(b), 8–182(b).

3. Green defines the relevant class as:

   [R]etired and current City of Chicago employees:

   (a) who have received, or will receive, salary or wage increases for a lesser portion of a calendar year in the last ten years before they have retired or will retire; and

   (b) who paid, pay or will pay pension contributions to the Fund based on the total actual wages or salaries paid or to be paid to them; and

   (c) who receive, or will receive, pension benefits from the Fund in the form of an annuity based on a highest average annual salary during any four or five consecutive years during the last ten years worked, determined not by wages or salaries actually received, but the wage or salary applicable for the greater portion of the year; or

   (d) who are now paying pension contributions to the Fund.

## II.  Discussion

The issue presented in this action is essentially the proper interpretation of an Illinois statute.  That is, Green argues that Stack and the Board are interpreting the Pension Code incorrectly, and that he is suffering as a result.  Green asserts that Section 8–234 essentially requires that the amount deducted from an employee's actual salary in a given year not exceed 8½ percent (the "proper salary deduction rate[ ]") of the "annual salary" for pension purposes (i.e., the annualized amount that the employee was making for the greater portion of the year).  As the Fund is currently being administered, however, no consideration is paid to whether the amount deducted from an employee's actual salary is equal to, greater than, or smaller than the amount obtained by applying the deduction rate to the "annual salary," as determined for pension purposes.  As a result, Green claims, when an employee receives a raise for a lesser portion of the year, the amount deducted from that employee's salary for contribution into the Fund for that year exceeds the amount which would be obtained by applying the deduction rate to that employee's fictitious "annual salary."[4] Because Green's reading of the statute prohibits that result, he asserts that he is being denied his property (the money he would have received but for the impermissible excessive deductions) without due process, in violation of the Fourteenth Amendment of the United States Constitution, and of Article I, Section 2 of the Illinois Constitution.  In addition, as noted above, Green maintains that Stack and the Board's improper interpretation and application of the Pension Code amounts to a breach of their statutory fiduciary duty.  Finally, Green alleges that, if the statute is currently being interpreted correctly, then the statute itself is unconstitutional.

We certainly have jurisdiction to consider Green's claims.  However, it is equally apparent that resolution of Green's state law claims in state court would almost certainly obviate the need for us to reach the constitutional issues which provide the federal basis for this suit.  That is, if the state court were to find in favor of Green, then they could also remedy defendants' breach of their fiduciary duty and violation of the Illinois due process clause, eliminating any federal constitutional issue.  If, on the other hand, the state court ruled in favor of defendants, then we would not have to resolve, at minimum, a significant portion of Green's federal claim, since it is the statute itself which provides Green his property interest in his pension.  *See, e.g., Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

For these reasons, we conclude that *Pullman* abstention is appropriate.  *See Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).  As the Seventh Circuit has noted, "*Pullman* abstention is invoked to obviate the need to decide a federal constitutional issue where an unsettled question of state law might be dispositive."  *Moses v. County of Kenosha,* 826 F.2d 708, 709 (7th Cir.1987).  *See also Mireles v. Crosby County,* 724 F.2d 431, 433 (5th Cir.1984) ("*Pullman* abstention is a judicially created doctrine which postpones the exercise of federal jurisdiction in order to clarify ambiguous state law issues when resolution of such issues might eliminate or substantially modify a federal constitutional question.").  In *Mireles,* plaintiffs contended that Texas law gave rise to a property interest in certain welfare benefits, and that de-

---

4.  For example, if an employee made $12,000 annually for the first eight months of the year, and then received a raise, such that she was making $15,000 annually for the last four months of the year, she would have made $8,000 for the first eight months, plus $5,000 for the last four months, for a total of $13,000 in that year.  Total deductions for contribution to the Fund would be $1105 (8.5% × $13,000).  For annuity purposes, however, the employee's "annual salary" would be $12,000, since that is the amount she made for the "greater number of months" in the year under consideration.  *See* 40 ILCS 5/8–233.  Application of the proper salary deduction rate to this "annual salary" produces an amount of $1020 (8.5% × $12,000).  Under Green's interpretation of Section 8–234, the amount of the actual deduction in this example is impermissible under the statute, because the amount actually deducted exceeds the amount produced by application of the proper salary deduction rate to the "annual salary" considered for annuity purposes (i.e., $1105 > $1020).

**80**

fendants had deprived them of that property without due process of law. The district court concluded that *Pullman* abstention was appropriate, and the Fifth Circuit affirmed:

> It is well settled that *Pullman* abstention may be appropriate where an interpretation of the scope of the entitlement may have a considerable impact on the posture and resolution of the federal issues. Although clarification of the scope of article 2351, § 11 by the Texas courts might not eliminate the federal constitutional issue, it would certainly narrow the constitutional question.

*Mireles,* 724 F.2d at 433.

The same analysis applies with equal force here. Neither party has cited an Illinois case addressing the issue presented here, and our independent research has failed to disclose any. And, as discussed above, clarification of the relevant sections of the Pension Code will eliminate, either in whole or in significant part, the federal constitutional issue raised in Green's complaint. Accordingly, we invoke the *Pullman* doctrine and abstain from further proceedings in this case until the Illinois state courts have had an opportunity to rule on the issues of state law presented here.

### III. Conclusion

For the reasons set forth above, we dismiss this action without prejudice to file in the Illinois state court, and with leave to reinstate in this court, if necessary, following resolution of the state law issues in the state court. It is so ordered.