Patricia SCOLARO, et al.,

v.

**DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, et al.,**
**Defendant.**

**Civil Action No. 96–2643–LFO.**

United States District Court,
District of Columbia.

Nov. 27, 1996.

Don W. Crockett, Washington, D.C., for Plaintiffs.

Alice McCrory–Miller, General Counsel, Board of Elections & Ethics, Washington, D.C., for Defendants.

## MEMORANDUM

OBERDORFER, District Judge.

This lawsuit involves several claims arising out of the November 5, 1996 elections for two seats on the Advisory Neighborhood Commission ("ANC") 2E. The first set of claims is brought by plaintiffs Patricia Scolaro and Beverly Jost, the losing candidates in Districts 3 and 5 (respectively) of the ANC 2E.

They allege that defendants—the D.C. Board of Elections and its members—engaged in unconstitutional vote-dilution by allowing over 800 Georgetown students to register improperly, since the students had not yet established that they were residents of the District. The D.C. Board, however, has already certified the results of those elections in favor of the two candidates receiving the most votes. Unless enjoined, those persons will take office on January 1, 1997.

The second set of claims is brought by plaintiff Westwood Byrd, who was the incumbent Commissioner in District 4 of the ANC 2E, and was re-elected. She alleges that the D.C. Board acted in violation of her First Amendment rights by considering "frivolous and libelous" accusations against her for voter intimidation, and by scheduling a hearing on the subject for December 4, 1996. The purpose of that hearing is to determine whether the matter should be referred for prosecution.

### I.

In their complaint, Scolaro and Jost allege that the D.C. Board of Elections improperly registered over 800 unqualified voters, all of whom were students at Georgetown University. The complaint focuses primarily on the fact that the D.C. Board used registration forms that allow a person to register so long as he or she certifies (1) that he or she "live[s]" in the District of Columbia, and (2) that he or she does not claim the right to vote in any other jurisdiction. Scolaro and Jost contend that these requirements failed to guarantee that persons who registered to vote would be "residents" of the District. They point to several instances where Georgetown students, who registered to vote by certifying that they "live" in the District, also listed their "permanent residence" in the Georgetown Student Directory as being outside the jurisdiction.

Scolaro and Jost repeatedly emphasize that, by registering those Georgetown students to vote, the D.C. Board of Elections acted in contravention of D.C. law. Under the D.C.Code, a qualified voter must be a resident or domiciliary of the District. *See*

D.C.Code § 1–1302(2)(A) (1996). "Residence" is defined as "the principal or primary home or place of abode of a person." *See* D.C.Code § 1–1302(16)(A). Thus, Scolaro and Jost argue, the registration of voters who consider their permanent residence to be outside the District violates D.C. law. To the extent, however, that Scolaro and Jost contend that the D.C. Board failed to follow the D.C.Code, this Court lacks jurisdiction to consider their claims. A violation of D.C. law does not state a well-pleaded federal cause of action. The only cognizable claim in federal court is whether the D.C. Board of Elections violated the constitutional "one person-one vote" standard.

■ The argument made by Scolaro and Jost, however, does serve to highlight the important fact that resolution of their constitutional claims may rest in large part on the proper reading of the D.C.Code. If the rules regarding residency prohibit the D.C. Board from acting as it did, then Scolaro and Jost will have their remedy in D.C. Court. In that situation, this Court need not reach the constitutional question. It is only if the D.C. courts find that the Board adhered to D.C. law that this Court has to address the constitutional issue. · Therefore, under the abstention principles enunciated in *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), it is appropriate to defer resolution of the federal claims until the D.C. courts have had an opportunity to act. *See also Growe v. Emison*, 507 U.S. 25, 31–33, 113 S.Ct. 1075, 1080, 122 L.Ed.2d 388 (1993)· (federal court should " 'stay[ ] its hands,' when a constitutional issue will be mooted or presented in a different

posture following conclusion of the state-court case") (alteration in original).[1]

The Supreme Court has forcefully indicated that important principles of comity and federalism mandate that the D.C. courts be allowed to interpret their own statute before a federal court should purport to strike it down as unconstitutional. Otherwise, the course of action urged by Scolaro and Jost in the federal system could lead to the cumbersome (and in this case, unnecessary) procedure of interrupting and delaying the federal case in order to certify questions of "state" law to the D.C. Court of Appeals. *See, e.g., Johnson v. Washington Metropolitan Area Transit Authority*, 98 F.3d 1423 (D.C.Cir. 1996).[2]

## II.

■ The complaint also raises a second set of claims, brought by plaintiff Westwood Byrd. Byrd alleges that, in the weeks prior to the November 5 elections, she circulated a flyer informing Georgetown students that, by registering for the privilege to vote, they would also be assuming the obligations of D.C. citizenship, such as registering their cars and paying D.C. taxes. In response to those flyers, a Georgetown student, Dan Leistikow, raised accusations that Byrd was engaging in voter intimidation, *see* D.C.Code § 1–1318 (1996). Byrd maintains that her flyers were completely truthful and accurate, and that the accusations against her are frivolous and libelous. At the present moment, the D.C. Board has scheduled a hearing for December 4, 1996, to determine whether to refer the matter for prosecution. Byrd now seeks a Temporary Restraining Order and/or

---

1. Although at oral argument, Scolaro and Jost opposed the application of *Pullman* abstention to this case, they were not afforded the opportunity *to brief the issue in writing.* Yet for reasons analogous to those authorizing courts to decline jurisdiction *sua sponte*, and in light of the imminence of the January 1, 1997 date—at which time plaintiffs' claims might become moot, this ruling will not await further briefing. *See· Barichello v. McDonald*, 98 F.3d 948, 955 .(7th Cir. 1996) (abstention may be raised *sua sponte* ).

2. In fact, Scolaro and Jost have already initiated proceedings in the D.C. Court of Appeals. Those proceedings, however, reportedly involve only an

appeal from the certification of the election results, and do not involve any statutory or constitutional claims regarding the rules of residency. Scolaro and Jost express their concern that the D.C. case will be treated as a purely administrative matter, and that the D.C. Court of Appeals will decline to rule on any issues outside the administrative record. If that concern is well-founded, however, then Scolaro and Jost are free to seek recourse in the D.C. Superior Court, a "state" court of general jurisdiction. The D.C. Board of Elections has represented that it is willing to comply with any request to expedite those proceedings.

Preliminary Injunction to prohibit the hearing from going forth.

Federal courts have the authority to enjoin state proceedings in violation of the Constitution, *see Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); however, such injunctions are strongly disfavored. *See Watson v. Buck*, 313 U.S. 387, 400, 61 S.Ct. 962, 966, 85 L.Ed. 1416 (1941); *Fenner v. Boykin*, 271 U.S. 240, 243–44, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926) (state prosecution may be enjoined only in "extraordinary circumstances"). As the Supreme Court stated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43–44, 91 S.Ct. at 750. The Court explained, moreover, that "[c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not, by themselves be considered 'irreparable' in the special legal sense of that term." *Id.* at 46, 91 S.Ct. at 751. The principle that discourages federal interference with state prosecutions applies analogously to a preprosecution hearing such as the one scheduled by the D.C. Board here.

Although Byrd contends that the D.C. Board is acting in bad faith by holding a hearing, she has made no showing to support that conclusory allegation. There are no allegations of harassment or repeated threats of prosecution. At most, Byrd alleges that, while she was circulating her flyers, she met one of the members of the D.C. Board, Valerie Burden. Burden said, "Oh, I know who you are. There's going to be a hearing on what you've done." Byrd responded, "I don't think so." Burden replied, "Oh, I think so." *See* Pl.'s Compl. ¶ 66. Even accepting this allegation as true, it does not support a finding of bad faith sufficient to justify injunctive relief.

Moreover, Byrd has failed to show that the December 4, 1996 hearing will impermissibly "chill" her First Amendment rights. *See Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1964). As an initial matter, since Byrd has already completed the dissemination of her information and the elections have already occurred, any "chilling effect" caused by the D.C. Board hearing will be minimal—only to the extent that it could theoretically discourage Byrd and others like her from distributing flyers years from now at the next election. Moreover, "the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger*, 401 U.S. at 51–52, 91 S.Ct. at 754. "The chilling effect that admittedly can result from the very existence of certain laws on the statute books does not in itself justify prohibiting the State from carrying out the important and necessary task of enforcing these laws against socially harmful conduct...." *Id.* Therefore, injunctive relief is not warranted.

Lastly, following the *Dombrowski/Younger* line of cases, I conclude that Byrd has failed to state a claim upon which relief can be granted. As a matter of constitutional law, it would be extremely peculiar to rule that a hearing to discuss matters of public importance can be a violation of the First Amendment. This is especially true here, where Byrd will have the opportunity to appear in person, where she may be represented by counsel—who may, in turn, cross-examine witnesses—and where Byrd is permitted to present a defense and call witnesses to testify on her own behalf.[3]

---

3. Byrd also raised the argument that the D.C. Board lacks authority to hold a hearing in this situation. Yet counsel for the D.C. Board represents that the Board does, in fact, hold such hearings with some frequency. Moreover, Byrd's claim appears principally to involve questions of D.C. law. Nonetheless, to the extent that due process concerns are implicated, her argument is undercut by the fact that the D.C.Code expressly authorizes the D.C. Board of Elections to "[t]ake whatever action is necessary and appropriate to actively locate, identify, and register qualified voters...." D.C.Code § 1–1306(a)(2) (1996). In my opinion, that provision allows the D.C. Board to take steps related to protecting potential voters from being improperly dissuaded from exercising their franchise. *See also* D.C.Mun.Regs. § 102.4 (Board may call special

*ORDER*

For the reasons set forth in the accompanying Memorandum, it is this 27th day of November 1996 hereby

ORDERED: that the First and Second Claims for Relief sought by plaintiffs should be, and are hereby, DEFERRED pending resolution of state-court proceedings; and it is further

ORDERED: that the Third Claim for Relief sought by plaintiffs should be, and is hereby, DISMISSED WITH PREJUDICE; and it is further

ORDERED: that the motion filed on behalf of James Fogarty, Dan Leistikow, and Rebecca Sinderbrand for Leave to File a Brief *Amicus Curiae* and to Participate in Oral Argument should be, and is hereby, DENIED, albeit without prejudice to their participation on behalf of any party or *amicus curiae* in any proceedings before another court or agency; and it is further

ORDERED: that the Motion for Temporary Restraining Order is DISMISSED AS MOOT; and the Motion for Preliminary Injunction is DENIED.

meeting when necessary with reasonable notice