COLLOTON, Circuit Judge,
concurring in the judgment.
The plaintiffs in this case challenge the validity of Minnesota statute § 216H.03, subd. 3(2) and (3) on three grounds. They contend that the statute is preempted by the Federal Power Act, 16 U.S.C. § 824, et seq., preempted by the Clean Air Act, 42 U.S.C. § 7401, et seq., and unconstitutional under the “dormant” Commerce Clause. The district court accepted the latter contention and permanently enjoined Minnesota from enforcing the statutory provisions. I agree that the plaintiffs have standing to sue and that the dispute is ripe for resolution.
Although the district court did not address whether the Minnesota statute is preempted by one or both of the federal statutes, we should consider that question first. According to the Supreme Court, a preemption claim “is treated as ‘statutory’ for purposes of our practice of deciding statutory claims first to avoid unnecessary constitutional adjudications.” Douglas v. Seacoast Prods., Inc., 431 U.S. 265, 271-72, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977); accord Ariz. Dream Act Coalition v. Brewer, 818 F.3d 901, 913-14 (9th Cir.2016); C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 272 n. 13 (3d Cir. 2004). If federal law preempts the Minnesota statute, then it is unnecessary to address whether the statute violates a dormant limitation implied from the Commerce Clause.
The parties dispute the scope of the Minnesota statute. The plaintiffs urge a broad interpretation under which the statute regulates activity occurring entirely outside Minnesota. The State favors a narrower construction that applies only to bilateral contracts in which a Minnesota entity agrees to purchase power from an out-of-state energy provider. It is unnecessary to resolve that dispute (or to decide wheth *928 er the question should be addressed first by the state courts, see R.R. Comm’n of Tex. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)), because even under the State’s narrower view, the Minnesota statute is preempted by federal law.
Insofar as the Minnesota statute bans wholesale sales of electric energy in interstate commerce, I agree with Part II of Judge Murphy’s opinion that the statute is preempted by the Federal Power Act. The Federal Energy Regulatory Commission has exclusive jurisdiction over the interstate wholesale market for electricity, including wholesale rates. See Hughes v. Talen Energy Mkg., — U.S.-, 136 S.Ct. 1288, 1297, 194 L.Ed.2d 414 (2016). Because a State may not regulate wholesale rates, it follows that a State may not impose a complete ban on wholesale sales, effectively forbidding the parties to arrive at any mutually agreeable price.
The Minnesota statute by its terms, however, does not constitute a complete ban on wholesale sales of energy that contribute to or increase statewide power sector carbon dioxide emissions. Subdivision 3 contains general prohibitions, but subdivision 4 establishes exceptions: If a “project proponent” demonstrates that it will “offset the new contribution” to emissions by reducing an existing facility’s emissions or by purchasing carbon dioxide allowances, or by a combination of both, then the prohibitions of subdivision 3 do not apply. The statute, therefore, permits a project proponent to conduct transactions otherwise prohibited by subdivision 3 if it meets the offset requirements. For example, in a proceeding concerning a new coal-fired plant of Great River Energy in North Dakota that would be used in part to serve Minnesota customers, the Minnesota Public Utilities Commission solicited comment on a carbon offset proposal to reduce emissions at other facilities that Great River Energy operated in North Dakota. SA 261. The State contends that a North Dakota entity also could satisfy the offset provision by purchasing carbon dioxide allowances from California or northeastern States.
Minnesota’s effort to require an out-of-state entity to comply with the statute’s offset provision conflicts with the Clean Air Act. The Clean Air Act regulates emissions through a cooperative federalism approach. The Act grants the Environmental Protection Agency authority to establish baseline standards, including limits on emissions. 42 U.S.C. §§ 7408, 7409. It then calls for each State to develop a State Implementation Plan to regulate stationary sources within its boundaries. §§ 7407, 7410(a)(1). Each State’s plan must include “control measures, means, or techniques,” such as “enforceable emission limitations” or “marketable permits,” to meet the Act’s requirements. § 7410(a)(2)(A). States are permitted to employ emissions standards more stringent than those specified by the federal requirements. § 7416.
Each State is granted “primary responsibility for assuring air quality within [its] entire geographic region.” § 7407(a); see also § 7401(a)(3). The Act is designed so that each operator of a pollution source need look to only one sovereign — the State in which the source is located — for rules governing emissions. “[A]llowing ‘a number of different states to have independent and plenary regulatory authority over a single discharge would lead to chaotic confrontation between sovereign states.’ ” N.C., ex rel. Cooper v. Tenn. Valley Auth., 615 F.3d 291, 301 (4th Cir. 2010) (quoting Int’l Paper Co. v. Ouellette, 479 U.S. 481, 496-97, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987)).
The offset requirements of the Minnesota statute encroach on the source State’s authority to govern emissions from sources *929 within its borders. If other States in the region enacted laws similar to the Minnesota statute, then an energy facility could be required to comply with multiple varying emissions requirements in order to sell wholesale energy through the MISO market. By demanding offsets or allowance purchases from a North Dakota energy facility as a condition for contracting to provide power to Minnesota customers, Minnesota’s statute conflicts with the regulatory scheme that Congress designed in the Clean Air Act. If Minnesota has concerns with emissions from its neighbors, then it may seek recourse through one of the Act’s several mechanisms by which affected States may challenge emissions from source States. See 42 U.S.C. § 7426; Tenn. Valley Auth., 615 F.3d at 310-11.
For these reasons, the challenged provisions of Minnesota law, Minn. Stat. § 216H.03, subd. 3(2) and (3), are preempted by federal law. I concur in the judgment affirming the district court’s injunction and dismissing the cross-appeal as moot.