**Marie Williams HUGHES and Joseph P. Hughes, Plaintiffs,**

v.

**Robert D. LIPSCHER, individually and in his official capacity as Director of the Administrative Office of the Courts, State of New Jersey, et al., Defendants.**

**Civ. A. No. 89–492.**

United States District Court, D. New Jersey.

Sept. 8, 1989.

Lisa Agresti Carey, Kevin Marino, Robinson, Wayne & La Sala, Newark, N.J., for plaintiff Marie Williams Hughes.

Paul W. Armstrong, Bridgewater, N.J., for plaintiff Joseph P. Hughes.

Michael L. Diller, Deputy Atty. Gen., Peter N. Perretti, Jr., Atty. Gen., Trenton, N.J., for defendants.

## OPINION AND ORDER

POLITAN, District Judge.

This matter comes before the Court on plaintiff's application for a preliminary and permanent injunction to prevent enforcement of New Jersey Supreme Court Municipal Bulletin Letter # 5/6–77 which prohibits marriages and certain other relationships between municipal court clerks and police officers working in the same municipality. Plaintiff also seeks a declaration that the Bulletin Letter is unconstitutional on its face and as applied to the facts of this case. Defendants have filed a cross-motion urging this Court to abstain from

reaching the merits of plaintiff's application, or in the alternative, for summary judgment.

Since the very beginning of time, marriage has been one of the fundamental cornerstones of all mankind. The right to marry is so fundamental and important to our society that the Supreme Court has recognized it as being implicit within the Constitutional framework. With a fundamental right of such importance, to have this Court or any Court for that matter, interfere with, impede or penalize two persons desiring to enter into that relationship, requires a compelling state interest of great magnitude. Even in such cases, all reasonable alternative avenues to satisfy that compelling state interest must be explored and rejected before such a regulation can pass Constitutional muster. The Court should encourage legitimate marriage, not discourage it. Broad brush regulations, such as the one in the case at bar, suggest mechanical, computer-like answers to human problems of constitutional dimensions, without giving proper consideration to balancing the importance of this "vital personal right essential to the orderly pursuit of happiness by free men"[1] with the compelling state interest. That balance clearly tips in favor of the right to marry and, as such, requires that the regulation in question be declared unconstitutional.

The essential facts of this case are not disputed. In 1975, plaintiff Marie Williams became employed as a clerk typist in the Borough of North Arlington Municipal Court. On July 29, 1981, she was appointed to the Civil Service permanent position of Municipal Court Clerk by Borough Resolution, retroactive to April 21, 1981. Plaintiff Joseph Hughes obtained employment with the Police Department of the Borough of North Arlington on December 5, 1971. From December 1971 through March 1983, he held the rank of patrolman. In March 1983 Joseph Hughes was promoted to the rank of Detective with the North Arlington Police Department. Since that time, he has been exclusively assigned to the Detective Bureau which investigates primarily criminal offenses of an indictable nature. These offenses are routinely prosecuted in the Superior Court of New Jersey and unless downgraded, are beyond the jurisdiction of the Municipal Court.

In May 1977 the Supreme Court, through the Administrative Office of the Courts, issued a directive through Municipal Court Bulletin Letter # 5/6–77 which provides:

SPOUSE, PARENT OR CHILD OF LAW ENFORCEMENT OFFICER SERVING AS COURT CLERK OR DEPUTY COURT CLERK.

The Supreme Court has considered various problems that may arise when the spouse or parent or child of an enforcement officer serves as a court clerk or deputy court clerk in a municipal court where the officer serves on the police force in that municipality. The Court has indicated that after August 1, 1977 no court clerk or deputy court clerk of a municipal court may be appointed or designated if that person has a spouse, parent or child who is or becomes a police officer serving on the police force in that municipality. If such situations exist on or before August 1, 1977 they may continue provided that court clerks or deputy court clerks of any municipal court should not prepare or complete the jurat on any complaint or sign any arrest warrant nor fix bail involving any local, county or state officer who is his or her spouse, parent or child. In these situations, the court clerk or deputy court clerk, who is not so related to the officer should perform these acts. If necessary, the judge or acting judge should be called to perform these acts.

All municipal courts, regardless of size, should have a deputy court clerk, who can act in conflict situations noted above and, of course, when the court clerk is sick, on vacation or otherwise unable to perform required duties.

On July 17, 1988 Marie Williams married Joseph Hughes. By letter dated August 10, 1988 Judge Russello, Municipal Court Judge for the Borough of North Arlington, informed Assignment Judge Peter Ciolino

---

**1.** *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967).

of the Hughes' marriage. In the letter, Judge Russello questioned the application of the Bulletin Letter to the Hughes' circumstances and described a recusal arrangement to be implemented in the Hughes' situation. Judge Ciolino's Trial Court Administrator, Dr. Conrad Roncati, responded that the Bulletin Letter was applicable to the Hughes' situation and that "pending resolution of this matter the Clerk is to be recused from any matter involving the spouse in Municipal Court." The Hughes did not pursue any administrative appeal of this determination but instead filed the instant action in Federal Court. Following commencement of this suit, defendants agreed to withhold any procedural or administrative action against plaintiff Marie Williams Hughes pending a final decision by this Court. Upon agreement of all parties involved in this litigation, therefore, this Court's Opinion and Order is a final judgment on the merits of plaintiffs' application for injunctive and declaratory relief.

In their Complaint, plaintiffs allege that Bulletin Letter # 5/6–77 directly and significantly interferes and infringes upon their constitutionally protected rights of privacy, family association and marriage in a manner that fails to advance a compelling state interest by narrowly tailored means. In addition, plaintiffs maintain that Bulletin Letter # 5/6–77 violates the equal protection clause of the Fourteenth Amendment by creating a classification that prohibits certain family relationships between Municipal Court Clerks and police officers, while allowing other family relationships of a similar nature in the same job categories. Plaintiffs also state a claim pursuant to 42 U.S.C. § 1983 for a deprivation of federal rights under color of state law.[2] Finally, plaintiffs allege that the terms of Bulletin Letter # 5/6–77 violate the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1, et seq., which specifically prohibits discrimination based on "marital status", and their state constitutional rights under Article I, ¶ 1 of the New Jersey Constitution.

At the outset, defendants argue that this Court should abstain from hearing plaintiffs' claims based on the doctrine of abstention as set forth in *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[3] In their view, plaintiffs must bring a state court action and ultimately seek the opinion of the state Supreme Court sitting in its adjudicative rather than its rule making capacity before filing for relief in this Court.

■ Abstention from the exercise of federal jurisdiction is the exception, not the rule. *See Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Generally, federal courts should fully adjudicate claims that are properly presented and that are within the court's jurisdiction. Abstention can be justified only in exceptional circumstances presented "in a narrow range of special cases." *United States v. Pittsburgh*, 757 F.2d 43, 45 (3d Cir.1985).

■ In general, *Burford* abstention is appropriate when a federal court is presented with highly complex and technical state regulatory schemes usually administered by specialized state regulatory agencies. *See United Services Auto. Ass'n v. Muir*, 792 F.2d 356, 364 (3d Cir. 1986), *cert. denied sub nom.*, *Grode v. United Services Auto. Ass'n.*, 479 U.S.

---

2. In pursuing a cause of action under 42 U.S.C. § 1983, plaintiffs are not precluded, under the principle of "exhaustion of administrative remedies", from obtaining relief from this Court. The Supreme Court has unambiguously held that exhaustion of state judicial or administrative remedies is not a prerequisite to a federal law suit initiated under 42 U.S.C. § 1983. *See generally Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). This is true even where a § 1983 action asserts claims for declaratory and injunctive relief.

*See Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 737 (3d Cir.1983).

3. The third doctrine of abstention, developed in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is not applicable to the circumstances of this case because there is no existing administrative or judicial proceeding pending in the state system to which this Court should defer its adjudicatory power.

1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987). In *Burford* itself, the federal court was required to interpret state regulations governing oil and gas conservation and the drilling of wells. *See* 319 U.S. at 318, 63 S.Ct. at 1099. Because federal intervention would likely have disrupted the specialized system for the formation of policy and the determination of cases developed by the state, the Supreme Court agreed that abstention was appropriate. *See* 319 U.S. at 334, 63 S.Ct. at 1107.

■ *Burford* abstention is clearly unwarranted on the facts before the Court. This case involves neither a complex scheme of state regulations nor a state body specially created to interpret complex regulations. In fact, the defendants note in their papers that there is no doubt concerning the application of the Bulletin Letter to the facts of this case, or that it requires Marie Hughes' disqualification from continued employment as Municipal Court Clerk. Because the facts presented in this case are clearly distinguishable from *Burford* and its progeny, this Court concludes that abstention under the *Burford* doctrine is inappropriate.

■ The *Pullman* abstention doctrine requires that a federal court abstain from exercising its jurisdiction "when difficult and unsettled questions of state law must be resolved before a substantial federal question can be decided." *See Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). For *Pullman* to apply, the state statute must be "obviously susceptible of a limiting construction" and "a bare, though unlikely, possibility that state courts *might* render adjudication of the federal question unnecessary" is insufficient. *Id.* at 237, 104 S.Ct. at 2327 (emphasis in original).

■ In the instant case, defendants can point to no uncertain or novel issue of state law that would moot plaintiffs' constitutional claim or narrow the scope of the issues presented. To the contrary, the provisions of the Bulletin Letter are clear and straightforward: service as a municipal court clerk or deputy court clerk is precluded for anyone with a specific close family relative serving on the police force of the same municipality.[4] This Court need not look to the state courts for an authoritative construction of the regulation. *See National City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1126 (8th Cir.1982); *Schwartz v. Judicial Retirement System of New Jersey*, 584 F.Supp. 711, 717–18 (D.N.J.1984). As a result, abstention under the *Pullman* doctrine is similarly inappropriate in the instant case. Therefore, this Court will consider the merits of plaintiffs' claims for injunctive and declaratory relief.

Plaintiffs claim that the Bulletin Letter violates their rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution. The equal protection clause was intended as a restriction on state action inconsistent with basic constitutional principals. *See Plyler v. Doe*, 457 U.S. 202, 206, 102 S.Ct. 2382, 2389, 72 L.Ed.2d 786 (1982). Thus, a regulation is presumptively invalid if it infringes on a fundamental right or disadvantages a suspect class. *See id.* In such cases, the regulation is subject to strict scrutiny and the state must show that a compelling interest supports the classification and that no less restrictive alternative is available. *See id.* at 217, 102 S.Ct. at 2395. In cases involving neither a fundamental right nor a suspect class, the classification need only be rationally related to a legitimate state interest. *See id.* at 217–18, 102 S.Ct. at 2395.

Plaintiffs also allege that the Bulletin Letter violates their right of substantive due process implicit in the Fourteenth Amendment of the United States Constitution. The standards employed for substantive due process analysis are similar to those employed under equal protection. In general, a state statute does not violate

---

4. In a recent administrative proceeding, *In the Matter of Lois Long*, Office of Administrative Law Dkt. No. OAL 5640–82 (August 4, 1983), petitioner was terminated from her position as municipal court clerk pursuant to Bulletin Letter # 5/6–77, when her son became a member of the police department in the same municipality.

substantive due process if that statute reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory. *See Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934). However, in cases involving a "fundamental right" the Court applies a stricter standard of scrutiny requiring that the fundamental right not be abridged absent a compelling state interest. *See Roe v. Wade*, 410 U.S. 113, 154, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973).

The basis for plaintiffs' arguments is that the Bulletin Letter interferes with their fundamental right to marry. The text of the United States Constitution does not specifically mention the right to marry. However, the United States Supreme Court has recognized that this right is incorporated in the fundamental right of privacy protected by the due process clause of the Fourteenth Amendment. *See Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). In *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), the Supreme Court concluded that "the freedom to marry has long been recognized as one of the vital personal rights essential to an orderly pursuit of happiness by free men." 388 U.S. at 12, 87 S.Ct. at 1823; *see also Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974) ("this Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the due process clause of the Fourteenth Amendment"); *Griswold v. Connecticut*, 381 U.S. 479, 486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965) (marriage is a "right of privacy older than the Bill of Rights"). Recently, the Supreme Court in *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), reaffirmed the fundamental nature of the right to marry in our society, stating

> [i]t is not surprising that the decision to marry has been placed on the same level of importance as decisions relating to procreation, child birth, child rearing, and family relationship.... It would make little sense to recognize a right of privacy with respect to other matters of fami-

ly life and not with respect to the decision to enter the relationship that is the foundation of the family in our society. *Id.* at 386, 98 S.Ct. at 681.

■ In this case, the Bulletin Letter imposes a substantial and significant interference with the right to marry. Properly enforced, Bulletin Letter # 5/6–77 mandates that a court clerk and a police officer employed by the same municipality can never be married and maintain their respective employments. In order to enter into or remain in a marital relationship, one of the spouses must leave their present position with the municipality, regardless of their quality of performance or length of service. If neither spouse voluntarily resigns from their position, the municipal court clerk will be terminated. *See In the Matter of Lois Long*, Dkt. No. OAL 5640–82. As an alternative course of action, defendants suggest that the clerk, as a civil service employee, could accept a demotion in employment status. Each of these alternatives impose an impermissibly harsh sanction upon municipal employees seeking to exercise or maintain a fundamental right implicit in the Constitution. Such a suggestion flies in the face of the customs and history of almost every civilization since the beginning of time. No law, regardless of intent, should have a "chilling effect" upon marriage. To the contrary, it should embrace marriage as a legitimate societal goal.

To justify the interference with fundamental rights caused by the Bulletin Letter, defendants maintain that marital and specific other close family relationships between members of the police and the municipal court cast suspicion and doubt upon the neutrality of their respective public duties and authorities. The Bulletin Letter is intended to avoid the appearance of impropriety in the New Jersey Municipal Court system and to uphold to integrity of the judicial process. The state argues, therefore, that the directive is grounded upon a compelling state interest and should pass constitutional muster.

There is no question that preserving the integrity of the judiciary is an important

and laudable state goal, especially at the municipal level. As the Supreme Court of New Jersey stated in *In re Mattera*, 34 N.J. 259, 168 A.2d 38 (1961),

[i]n many respects the municipal court is the most important in our judicial system. No other court can match its volume of cases. Our municipal courts dispose annually of approximately one and one-half million matters, a number which dwarfs the total proceedings in all other courts of this state. For all practical purposes, the judgments of the municipal court are final. It is there that most citizens have their sole exposure to the judicial process. The respect they have for the judiciary hinges upon that experience.

*Id.* at 275, 168 A.2d 38.

As a practical matter, local police officers must frequently interact with the clerk of the court in their municipality to secure warrants, complete summonses, set bail and issue oaths and affidavits. N.J. S.A. 2A:8–27; *see State v. Ruotolo*, 52 N.J. 508, 511, 247 A.2d 1 (1968); *State v. Gonzalez*, 69 N.J.Super. 283, 174 A.2d 209 (App.Div.1961); *State v. Johnson*, 23 N.J. Super. 296, 92 A.2d 808 (App.Div.1952). The importance of the municipal court in handling these types of actions cannot be disputed. To protect this important role and preserve the public's confidence, the municipal court must be perceived as untouched by favoritism and any other private considerations. To this end, the Bulletin Letter clearly promotes the defendant's interest by eliminating the appearance of impropriety between the municipal court and the local police force.

To withstand scrutiny under federal equal protection standards, however, a compelling state interest must justify creating classification of municipal employees under the Bulletin Letter. *See Plyler*, 457 U.S. at 206, 102 S.Ct. at 2382. While it is clear that the directive promotes the state's enunciated interests, this Court concludes that on balance those interests are not so compelling as to justify the creation of a

distinct class of municipal employees who are penalized for exercising their fundamental rights. This Court is not persuaded by defendants' argument that marital and parent-child relationships present a distinct, constitutionally permissible category of persons to the exclusion of others. In this Court's view, members of the same family related by blood or by marriage, including brothers, sisters, cousins, uncle-niece, aunt-nephew, and grandparent-grandchild, present an equal or even greater threat of improper conduct.[5] The failure of the state to include these groups within the scope of the Bulletin Letter imposes an arbitrary and discriminatory burden on plaintiffs and similar municipal employees affected by the Bulletin Letter.

Moreover, the Bulletin Letter includes a "grandfather clause" that exempts from the scope of its provisions marital and parental relationships existing prior to August 1, 1977. Specifically, the directive permits a municipal court clerk, related as a parent, child or spouse to a police officer in the same borough, to continue in their employment subject to an explicit recusal procedure. Under that procedure, the clerk must refrain from participation in all matters involving the relative on the police force. Any official duties of the clerk in these circumstances must be executed by other municipal court personnel.

Clearly, the state's interests in judicial integrity and avoiding the appearance of impropriety are implicated as much by marital and parent-child relationships that existed prior to August 1, 1977 as they are by relationships that arose after that date. The state, in fact, recognizes that the fundamental purpose of the Bulletin Letter is not completely satisfied by the exemption of the grandfathered class. However, they urge that this provision reduces any undue hardship on individuals who could not anticipate their disqualification under the terms of the Bulletin Letter. In addition, the recusal cutoff date eliminates individualized inquiries into the degree of hardship existing in each case.

---

5. Moreover, other types of relationships widely recognized in modern society must be included

within the terms of the Bulletin Letter in order to withstand strict equal protection analysis.

If the state interest is so important and compelling, however, no deviation, grandfather or not, cut-off date or not, is a permissible Constitutional exception. Defendants' justifications are not a sufficient basis for denying plaintiffs, or any employee subject to the provisions of the Bulletin Letter, the alternative of recusal when the circumstances dictate that such procedure is appropriate. Recusal of a court official is a universally accepted procedure which eliminates the appearance of impropriety or bias within the judicial system. It is done every day of the week from the Supreme Court of the United States to the lowest judicial tribunal in existence. Judicial history is replete with such actions which need not be enumerated. In the instant case, an effective recusal procedure similar to or the same as that existing for the grandfathered class can be employed for all persons affected by the terms of the Bulletin Letter to insure that court clerks and police officers in the same town or borough are never involved in the same municipal court case. Such a procedure serves the state's enunciated interests without intruding on the municipal employee's fundamental Constitutional rights or violating the fundamental precepts of equal protection.

Plaintiffs also argue that the Bulletin Letter deprives them of their substantive due process rights as protected by the Fourteenth Amendment of the United States Constitution. The due process clause of the Fourteenth Amendment not only requires that the state follow appropriate procedures when acting to deprive a person of life, liberty or property, but also may bar certain arbitrary state actions regardless of the procedures used to implement them. *See Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986); *see also Zannino v. Arnold,* 531 F.2d 687, 690 (3d Cir.1976) (touchstone of due process is protection of individuals against arbitrary action of the government). "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf" which triggers the protections of the due process clause. *See DeShaney v. Winnebago County,* — U.S. —, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989). In determining whether a substantive right protected by the due process clause has been violated, it is necessary to balance the liberty interest of the individual with the demands of modern society. As Justice (formerly Judge) Kennedy noted in *Beller v. Middendorf,* 632 F.2d 788 (9th Cir.1980), *cert. denied sub nom., Miller v. Weinberger,* 454 U.S. 855, 102 S.Ct. 304, 70 L.Ed.2d 150 (1981),

> [r]ecent decisions indicate that substantive due process scrutiny of a government regulation involves a case-by-case balancing of the nature of the individual interest allegedly infringed, the importance of the government interests furthered, the degree of infringement, and the sensitivity of the government entity responsible for the regulation to more carefully tailored alternative means of achieving its goals.

*Id.* at 807 (citations omitted).

In this case, the Bulletin Letter imposes a restriction on the fundamental right to marry for select municipal employees. It cannot be disputed that preserving the right to marry for all citizens, including plaintiffs, is of paramount importance in our society. Conversely, the state has an important interest in preserving the integrity of the judicial system. As noted above, proper enforcement of the terms of the Bulletin Letter would impose a substantial and significant restriction on the fundamental rights of select municipal employees. The restriction is so severe that the affected class may be forced to forego the exercise of the right to marry. This Court concludes that the state's interest is not so compelling as to justify such a significant and substantial interference with fundamental constitutional rights of the plaintiffs or other similarly situated municipal employees. This is so particularly where less restrictive alternatives of accomplishing the desired result are possible. Simply stated, the end does not justify the means.

In fact, the express language of the Bulletin Letter indicates that the state has available to it a more narrowly tailored means of achieving its goals. The "grandfather clause" extends a procedure for recusal to certain municipal employees within

**462**

the scope of the Bulletin Letter. By extending the recusal provision to all municipal employees affected by the Bulletin Letter, the state not only can serve effectively its own enunciated interests, but it may also preserve the fundamental rights of its employees. In its present form, however, the Bulletin Letter arbitrarily interferes with the exercise of fundamental constitutional rights. As a result, this Court concludes that the Bulletin Letter violates plaintiffs' substantive due process rights afforded by the Fourteenth Amendment of the United States Constitution.

For the foregoing reasons, this Court concludes that New Jersey Supreme Court Municipal Bulletin Letter # 5–6/77 violates plaintiffs' fundamental equal protection and substantive due process rights protected by the Constitution of the United States.[6] The Court, therefore, permanently enjoins the defendants and all other officials, agents and representatives of the Courts of New Jersey from enforcing Bulletin Letter # 5–6/77 against plaintiffs or any other similarly-situated municipal employees.

SO ORDERED.

---

**6.** In light of this conclusion, this Court deems it unnecessary to address Counts III and IV of the Complaint alleging violations of 42 U.S.C. § 1983, Article 1, ¶ 1 of the New Jersey Constitution and the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1, *et seq.*