Marie Williams HUGHES and
Joseph P. Hughes

v.

Robert D. LIPSCHER, Individually and
in his official capacity as Director of
the Administrative Office of the Courts,
State of New Jersey; Conrad J. Ronca-
ti, Individually and in his official ca-
pacity as Bergen County Trial Court
Administrator, Superior Court of New
Jersey; and Stephen W. Townsend, In-
dividually and in his official capacity
as Clerk of the Supreme Court of New
Jersey.

Appeal of Robert D. LIPSCHER, Director
of the Administrative Office of the
Courts, Conrad J. Roncati, Bergen
County Trial Court Administrator, and
Stephen W. Townsend, Clerk of the Su-
preme Court of New Jersey.

No. 89–5916.

United States Court of Appeals,
Third Circuit.

Argued May 14, 1990.
Decided June 29, 1990.

Robert J. Del Tufo, Atty. Gen. of New Jersey, Michael L. Diller (argued), Deputy Atty. Gen., Michael R. Clancy, Asst. Atty. Gen. of Counsel, Dept. of Law & Public Safety, Trenton, N.J., for appellants.

Kevin H. Marino (argued), Steven L. Lapidus, Lisa A. Carey, Robinson, Wayne & La Sala, Newark, N.J., for appellees.

Before MANSMANN, SCIRICA and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

A directive of the Administrative Office of the New Jersey courts prohibits the appointment of a municipal court clerk who is married to a police officer. An incumbent clerk married a member of the police department and challenged the directive on federal and state constitutional, as well as state statutory, grounds. Declining to abstain, the district court ruled that the regulation violated the federal constitution, and enjoined its enforcement. 720 F.Supp. 454. We will vacate the court's order and remand for abstention pending a decision of the state Supreme Court.

Plaintiff Marie Williams Hughes first began employment with the Municipal Court of the Borough of North Arlington, Bergen County, New Jersey, in 1975 as a clerk-typist. Two years later she became the acting court clerk, and was appointed clerk of the court in July 1981. She has served in that capacity to the present time.

On July 17, 1988 Marie married plaintiff Joseph Hughes, a member of the North Arlington Police Department since 1971.

The plaintiffs' marriage brought into question the effect of a bulletin letter issued by the Administrative Office of the Courts of New Jersey in May 1977, stating in pertinent part:

"The Supreme Court [of New Jersey] has considered various problems that may arise when the spouse or parent or child of an enforcement officer serves as a court clerk or deputy court clerk in a municipal court where the officer serves on the police force in that municipality. The Court has indicated that after August 1, 1977 no court clerk or deputy court clerk of a municipal court may be appointed or designated if that person has a spouse, parent or child who is or becomes a police officer serving on the police force in that municipality. If such situations exist on or before August 1, 1977 they may continue provided that court clerks or deputy court clerks of any municipal court should not prepare or complete the jurat on any complaint nor sign an arrest warrant nor fix bail involving any local, county or state officer who is his or her spouse, parent or child. In these situations the court clerk or deputy court clerk, who is not so related to the officer should perform these acts. If necessary, the judge or acting judge should be called upon to perform these acts."

Administrative Office of the Courts of New Jersey, Municipal Court Bulletin Letter No. 5/6–77 (1977). The Administrative Office later issued another directive reaffirming the 1977 bulletin and extending its policy to cohabitation situations substantially similar to that of a marital relationship.

A few weeks after the wedding, a North Arlington Municipal Court judge inquired of the Assignment Judge of Bergen County whether the directive applied to Mrs. Hughes. Defendant Conrad Roncati, the Bergen County Trial Court Administrator, responded that he believed plaintiff was bound by the bulletin and directed, "Pending resolution of this matter the Clerk is to be recused from any matter involving the spouse in Municipal Court." When plaintiffs notified local officials of their inten-

tion to challenge the bulletin as applied to them, the Borough Administrator of North Arlington wrote to Roncati advising that "[t]he Mayor and Council have no problem whatsoever with Mrs. Hughes remaining as Court Clerk until the matter is resolved." The municipal court and Mrs. Hughes have since adhered to the recusal policy suggested by defendant Roncati.

Plaintiffs neither pursued any state administrative remedies nor requested a ruling from defendant Robert Lipscher, the Director of the Administrative Office of the Courts of New Jersey. Nor did they begin any action in the state courts. Instead, they filed a suit in the district court seeking declaratory and injunctive relief. In their complaint, plaintiffs alleged that the bulletin violated their marital rights as guaranteed by the Due Process and Equal Protection clauses of the federal constitution as well as article I, paragraph 1 of the New Jersey Constitution. Plaintiffs also asserted claims under the New Jersey Law Against Discrimination, N.J.Stat.Ann. §§ 10:5–1 to –42 (West 1976 & Supp.1989), which prohibits discrimination on the basis of marital status, *id.* §§ 10:5–3, –4.

The district court denied the defendants' motion for abstention, reasoning that the case did not come within the doctrine as established under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); or *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). With respect to *Pullman* abstention specifically, the court concluded that the "provisions of the Bulletin Letter are clear and straightforward," thus obviating the need to "look to the state courts for an authoritative construction of the regulation."

Proceeding to the merits, the district judge characterized the right to marry as "fundamental," which, under a strict scrutiny analysis, requires the state to demonstrate a compelling interest and the lack of a less restrictive alternative to protect that concern. The court determined that the directive imposed a "substantial and signif-

icant interference [on] the right to marry" and that the state's objective of eliminating the appearance of impropriety or bias in the municipal court system, although "an important and laudable state goal," was not so compelling as to justify the "arbitrary and discriminatory burden on plaintiffs."

The court emphasized that the generally accepted procedure of recusal would be a less restrictive means of serving the state's aim, without intruding on the plaintiffs' marital rights. An example of recusal, the court noted, is contained in the directive itself, whose grandfather clause exempts those who held office on or before August 1, 1977. Consistent with this reasoning, the district court declared that the state's policy violated the plaintiffs' equal protection and substantive due process rights, and issued an order permanently enjoining the bulletin's enforcement. In so deciding, the court deemed unnecessary any discussion of the provisions of the New Jersey Constitution and the state's statute against discrimination.

On appeal defendants contend that the real interests at stake are those relating to employment, not marriage. Consequently, they argue that the district court's review of the validity of the bulletin should have employed a rational basis test, not a strict scrutiny standard. Defendants also assert that upholding the integrity of the judicial process presents a compelling interest that cannot be secured simply by recusal. In contrast, plaintiffs insist that the bulletin's restriction implicating their fundamental right of marriage requires strict scrutiny, and that the substantial burdens the directive imposes impermissibly interferes with that right.

Defendants moved for federal abstention in the district court, but did not raise the issue on this appeal. Because of the sensitive nature of this controversy, affecting as it does the administrative rules and operations of a state court system, we requested the parties to brief the abstention question for our examination.

## I.

Although the defendants' failure to raise abstention could arguably amount to waiver of its application, we have authority to consider the matter sua sponte. *Bellotti v. Baird*, 428 U.S. 132, 144 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); *Blake v. Kline*, 612 F.2d 718, 727 (3d Cir. 1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980). *See Robinson v. City of Omaha*, 866 F.2d 1042, 1043 (8th Cir.1989); *Catlin v. Ambach*, 820 F.2d 588, 591 (2d Cir.1987); *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir.1983); *Richardson v. Koshiba*, 693 F.2d 911, 915 (9th Cir.1982).

■ As a general rule, the federal courts are bound to adjudicate cases within their jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, —— U.S. ——, ——, 109 S.Ct. 2506, 2512–13, 105 L.Ed.2d 298 (1989); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Professional Plan Examiners of New Jersey, Inc. v. LeFante*, 750 F.2d 282, 290 (3d Cir.1984). There are, however, a few notable exceptions to this rule. In some cases where questions under both state law and the federal constitution are present, the policies of promoting comity with the state courts and ensuring the smooth functioning of the federal judiciary counsel the federal courts to stay their hands, at least initially. This is the abstention doctrine explicated in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ Generally, *Pullman* abstention may be appropriate where the state court's resolution of an unsettled question of state law may moot or change the analysis of the federal constitutional issue. *Georgevich v. Strauss*, 772 F.2d 1078, 1089 (3d Cir.1985) (in banc), *cert. denied*, 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986); *Heritage*

*Farms, Inc. v. Solebury Township*, 671 F.2d 743, 746 (3d Cir.), *cert. denied*, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). Although "[t]he practice of abstention is equitable in nature," *Bellotti*, 428 U.S. at 143 n. 10, 96 S.Ct. at 2864 n. 10, and is thus within the court's discretion, we have held that three special circumstances are prerequisites:

(1) Uncertain issues of state law underlying the federal constitutional claims brought in the district court;

(2) Amenability of the state law issues to a state court interpretation that would obviate the need for, or substantially narrow, adjudication of the federal claims;

(3) Disruption of important state policies through a federal court's erroneous construction of state law.

*Biegenwald v. Fauver*, 882 F.2d 748, 750 (3d Cir.1989); *D'Iorio v. County of Delaware*, 592 F.2d 681, 685–86 (3d Cir.1978), *overruled on other grounds, Kershner v. Mazurkiewicz*, 670 F.2d 440, 448 (3d Cir. 1982) (in banc).

When these elements are present, the court must next determine whether abstention is appropriate, considering such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the potential impact on the parties from the delay in seeking a state ruling. *Biegenwald*, 882 F.2d at 750–51; *D'Iorio*, 592 F.2d at 686, 691 & n. 18. *See Robinson v. New Jersey*, 806 F.2d 442, 449 (3d Cir.1986), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987); *Frederick L. v. Thomas*, 578 F.2d 513, 517 (3d Cir.1978). In view of the innumerable factual situations where pertinent factors in favor of or against abstention are submitted to the discretion of the court, it is not surprising that the decisional law is varied and the legal commentary voluminous.[1]

With these general principles of *Pullman* abstention in hand, we examine the

---

1. *See* 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 4241–4243 (2d ed. 1988 & Supp.1990) (discussing Supreme Court and Courts of Appeals case law); 1A Pt. 2 J. Moore, W. Taggart, A. Vestal, J. Wicker & B. Ringle, *Moore's Federal Practice* ¶ 0.203[1] (2d ed. 1990 & Supp.1990) (same). The two treatises provide extensive bibliographies of the more recent commentaries on abstention. C. Wright, *supra*, § 4241, at 3 n. 1; J. Moore, *supra*, ¶ 0.203[1], at 2101 n. 2.

state structure in which the disputed bulletin arose.

## II.

■■■The New Jersey Supreme Court has power under the state constitution to make rules governing the administration of all courts in the state. N.J. Const. art. VI, § 2, ¶ 3. The Chief Justice of the Supreme Court is designated the administrative head of the judiciary, and appoints the Administrative Director of the Courts to assist him in this capacity. *Id.* art. VI, § 7, ¶ 1; N.J. Court R. 1:33–1. The director heads the Administrative Office of the Courts, and, subject to the direction of the Chief Justice, performs various functions essential to the administration of the state court system. N.J.Stat.Ann. §§ 2A:12–1, –3 (West 1987). In addition, court rules specifically provide that the Administrative Director, at the direction of the Chief Justice and the Supreme Court, shall promulgate and enforce rules and directives relating to such matters as case processing, records and management information services, personnel, and budgeting. N.J. Court R. 1:33–3.[2]

Although they are appointed by the governing bodies of the municipalities where those courts are established, N.J.Stat.Ann. § 2A:8–13, clerks of the municipal courts are bound by rules promulgated by the state Supreme Court through the Administrative Office of the Courts, N.J. Court R. 1:1–1. Typically, such rules prohibit clerks and other judicial employees from holding or seeking elective public office, engaging in political activity, holding other employment, and receiving a fee for certain court-related services. N.J. Court R. 1:17–1, –3, –4. Employees who violate the rules or administrative directives may be removed by the state Supreme Court. *See In re Yengo,* 72 N.J. 425, 371 A.2d 41, 47 (1977); *In re Hardt,* 72 N.J. 160, 369 A.2d 5, 8 (1977) (per curiam).

The municipal courts are forums of limited jurisdiction, adjudicating minor offenses committed within the territorial boundaries of a particular municipality, or in some instances, multiple municipalities. N.J. Stat.Ann. § 2A:8–20. These courts hear such matters as motor vehicle and traffic violations, fish and game infractions, violations of municipal ordinances, disorderly persons offenses, nonindictable offenses, and a variety of similar litigation. *Id.* § 2A:8–21. *See id.* § 2A:8–22 (criminal offenses); *id.* § 2A:8–24 (contract disputes); *id.* § 2A:8–26 (civil actions).

In the course of these judicial functions, the clerk of the municipal court is empowered to issue, on behalf of a judge of the court, "[a]ll writs, processes, commitments, search warrants, bench warrants and subpoenas." *Id.* § 2A:8–15. The clerk may also administer or take any oath, acknowledgment, complaint, or affidavit to be used in court proceedings, issue summonses, endorse warrants from other counties, and make preliminary bail determinations. *Id.* § 2A:8–27. *See* N.J. Court R. 7:5–3 (authority to admit bail); *id.* 7:6–1(b) (issuance of summonses).

■■■ Against this general background we examine the propriety of the district court's decision not to apply *Pullman* abstention. In the process, we apply a de novo standard to the district court's conclusions on the first two special circumstances, uncertainty of state law and its effect on the federal constitutional question, because these determinations are essentially legal in nature. A ruling on the third circumstance, whether an erroneous interpretation of state law by the federal court would disrupt important state policies, is more discretionary in character, and we accord greater deference to the district court's appraisal if it is "adequately explained." *Biegenwald,* 882 F.2d at 751; *D'Iorio,* 592 F.2d at 686.

■■■ The first of the three special factors centers on uncertainty of the state law. In this case that inquiry focuses on whether the bulletin's language is clear and unmistakable. We do not find it so. The bulletin

---

**2.** For a discussion of the workings of the Administrative Office in its early years, by the then incumbent Administrative Director, see McConnell, *The Administrative Office of the Courts of New Jersey,* 14 Rutgers L.Rev. 290 (1960).

is vague and its application to Mrs. Hughes is not self-evident. The directive provides that after August 1, 1977, no court clerk "may be appointed or designated if that person has a spouse ... who is or becomes a police officer ... in that municipality." The text explicitly refers to appointment, but does not purport to address continuation in employment of a clerk already in office. Arguably, the reference to a spouse who "becomes" a police officer may reveal the directive's intent to cover an incumbent clerk who marries a police officer, as is the case here. But this is speculation, because no state court has taken such a position.

Facially, the bulletin seems to target two types of candidates for appointment: (1) Those who are married to police officers; and (2) others whose spouses become police officers. The first scenario is clear enough; the second is not. Perhaps the second category is intended for the situation where the candidate's spouse seeks, and is on the verge of attaining, a position in the police department. The bulletin, however, does not specify when the candidate's spouse need become a police officer to trigger the restriction. If the spouse becomes a police officer years after the candidate is appointed clerk, the bulletin presents a riddle of chronology. It is questionable whether the directive can prohibit the appointment of a clerk based on a condition that may occur in the future.

Our reading and consideration of the state law here lead us to conclude that it is unclear whether the bulletin is directed toward plaintiff. Mrs. Hughes is, not a candidate for appointment, but rather an incumbent of some years duration. If the directive does not apply to her, then there is no case or controversy within the jurisdiction of the federal courts. The New Jersey Supreme Court has yet to interpret the bulletin and its practical application remains an unsettled issue of state law. The first prerequisite is therefore present.

Second, the state court reviewing the directive may well extend the application of the grandfather clause to all clerks who, after appointment, marry police officers.

It is not improbable that the New Jersey court could decide that recusal is an adequate measure for an individual in Mrs. Hughes' position, or that because of uncertainty in the directive's language, fairness requires a recusal policy rather than vacation of the office.

We are persuaded that the bulletin is "obviously susceptible" to an interpretation by the state court that would substantially limit, or indeed, avoid altogether consideration of the federal constitutional issues. *See Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2326–27, 81 L.Ed.2d 186 (1984); *United Servs. Auto. Ass'n v. Muir*, 792 F.2d 356, 361 (3d Cir. 1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987). Moreover, we note that the state court may choose to consider the validity of the directive under either the New Jersey Constitution or statute against discrimination, N.J.Stat.Ann. §§ 10:5–3, –4. Such adjudication may obviate the need for review of the plaintiffs' federal constitutional claims. The second special circumstance has also been demonstrated.

Third, an erroneous interpretation of the bulletin by the federal courts would undoubtedly have a disruptive effect on an important state policy. That preventing or reducing the occasions for public perception of bias and favoritism within the judicial system is a serious concern for the state, needs no elaboration from us. The three prerequisite circumstances for *Pullman* abstention have thus been met.

Next we must consider whether equitable factors weigh against abstention. This litigation is not long standing; undue delay has not occurred. The district court entered its injunction with reasonable promptness after the suit commenced, and the case has proceeded expeditiously through this appeal. Plaintiffs here would not be materially harmed by delay pending a resolution by the state court, unlike the cases where such delay would deprive disabled children of educational opportunities, *Frederick L. v. Thomas*, 557 F.2d 373, 383–84 (3d Cir.1977), or prevent individuals from marrying, *Moe v. Dinkins*, 635 F.2d

1045, 1050 (2d Cir.1980). This is not a situation where adverse consequences are beyond the control of the parties. Here, defendants agreed that Mrs. Hughes could retain her post for the duration of the federal litigation, on the condition that recusal be invoked whenever necessary. Appellant's Brief at 8, 14. We have no reason to anticipate that similar forbearance would not be granted while state proceedings are pending.

Moreover, as defendants explain, even if the bulletin were applicable to Mrs. Hughes, she would not be discharged from the civil service, but could be entitled to a lateral transfer in municipal government where the appearance of impropriety in a judicial setting does not arise.

Any objections to abstention here asserting lack of an adequate state remedy or futility in submitting the controversy to the very court that nominally promulgated the regulation, are countered by *In re Gaulkin*, 69 N.J. 185, 351 A.2d 740 (1976). There, the spouse of a New Jersey Superior Court judge challenged a directive issued by the Administrative Office announcing the state Supreme Court's policy that "it is undesirable for the wife of a judge to be politically active, since it invariably creates the impression that the judge himself may be politically active, albeit not openly." Administrative Office of the Courts of New Jersey, Directive No. 17–61 (1962), *quoted in Gaulkin*, 69 N.J. at 190 n. 1, 351 A.2d at 742 n. 1.

Initially, Judge Gaulkin's wife had informally sought an opinion from the justices of the Court about her planned candidacy for a school board position. In a letter the Court responded that such political activity "would, unintentionally but seriously, affect public confidence in the judicial system." *Gaulkin*, 69 N.J. at 190, 351 A.2d at 742. Mrs. Gaulkin then petitioned the Supreme Court in its adjudicatory capacity to review the directive. The Court did so and concluded that the ban on spousal political activity was unduly restrictive, thus withdrawing the previous advisory disapproval. As a consequence, the judge's spouse was free to seek elective public office, provided

that care was taken to assure that the judge was not directly or indirectly involved in the campaign.

The *Gaulkin* case illustrates that a directive issued by the Administrative Office is nevertheless subject to scrutiny and modification by the state court after full consideration of the issues raised by an affected party.

It is significant too that in *Gaulkin* the state Supreme Court permitted the petitioner to seek direct review. Willingness to allow such an expeditious procedure is also seen *In re LiVolsi*, 85 N.J. 576, 428 A.2d 1268, 1271 (1981), where the Court, exercising original jurisdiction, invited and determined a challenge to the state rule governing attorney fee arbitration committees. We have no reason to expect that plaintiffs here would not likewise receive prompt and fair treatment.

Finally, the very important principle of comity cannot be ignored. State courts shoulder the overwhelming bulk of litigation in this country and must be free of inappropriate interference in their internal operations if they are to perform their tasks efficiently. The federal courts owe deference to their state counterparts in situations where public perceptions of the integrity of the state judicial system are affected. We should not precipitously intervene when we have substantial doubts as to the position the state court would take in reviewing a measure designed to enhance the propriety of the municipal courts' operations. Indeed, *Pullman's* stated goal of "furthering the harmonious relation between state and federal authority," *Pullman*, 312 U.S. at 501, 61 S.Ct. at 645, would be substantially hampered by undue federal intrusion here.

In sum, existence of the special circumstances and equitable considerations in this case warrant abstention from the exercise of federal jurisdiction. Here, the exception is justified.

We emphasize that this Court takes no position, nor intimates any view, on the merits of the federal constitutional issues raised by plaintiffs. The discussion of the

968

issues here is intended only to explain our disposition of the abstention question.

The order of the district court will be vacated and the case remanded with instructions to abstain pending an authoritative decision by the New Jersey Supreme Court. In the interim, the district court is to retain jurisdiction. The parties will bear their own costs.