John E. TRONE, an individual, and Case Beer and Soda Outlet, Inc. d/b/a Beer World, 520 South 29th Street, Harrisburg, Pennsylvania, a Pennsylvania Corporation, Plaintiffs,

v.

Ernest PREATE, Jr., Attorney General of the Commonwealth of Pennsylvania, in his official capacity, Lawrence N. Claus, Deputy Attorney General, in his official capacity, Glenn Walp, Acting State Police Commissioner, in his official capacity, Major William A. Mericle, Director of the Pennsylvania Bureau of Liquor Control Enforcement, in his official capacity, and Major George P. March, Director of the Pennsylvania Bureau of Criminal Investigation, in his official capacity, Defendants.

Civ. A. No. 1:CV–91–0429.

United States District Court, M.D. Pennsylvania.

April 12, 1991.

Robert B. Hoffman, Reed, Smith, Shaw & McClay, Harrisburg, Pa., Walter T. McGough, Jr., Jane F. Clokey, Reed, Smith, Shaw & McClay, Roslyn M. Litman, Litman, Litman, Harris, Brown & Watzman, P.C., Martha S. Helmreich, Pittsburgh, Pa., for plaintiffs.

Gwendolyn T. Mosley, John G. Knorr, III, Robert A. Graci, Office of Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

## PROCEDURAL BACKGROUND

Plaintiffs, John E. Trone and Case Beer And Soda Outlet, Inc. d/b/a/ Beer World, (plaintiffs) filed a complaint with this court on March 28, 1991, requesting a declaratory judgment that a provision of the Pennsylvania Liquor Code, 47 P.S. § 4–436(f), is

unconstitutional as applied to plaintiffs, and a preliminary and permanent injunction prohibiting the defendants from prosecuting them under that provision. Simultaneously, plaintiffs filed a motion for a temporary restraining order or preliminary injunction on the same grounds. The court held a hearing on the matter on April 3 and 4, 1991 and is now prepared to issue its ruling.

## FACTS

Plaintiff John E. Trone is the president and sole shareholder of plaintiff Case Beer And Soda Outlet, a beer distributorship located in Harrisburg, Pennsylvania, which operates under the trade name of Beer World (the "Harrisburg Beer World"). Pursuant to the Pennsylvania Liquor Code, 47 P.S. § 1–101 *et seq.* (Purdon 1969 and Supp.1990), John Trone holds the distributor's license for the Harrisburg Beer World. At least five other members of John Trone's immediate family now hold or have held licenses for beer distributorships in Pennsylvania.

The Trone family's involvement with the distributorship business apparently began with a distributorship owned by John Trone's parents (the "Hanover distributorship"). In varying degrees, John and his siblings assisted in the operation of the parents' distributorship during high school and college. In 1983, John's brother Robert Trone acquired a 55% interest in that distributorship, and the remaining interest was retained by his mother. At around the same time, John's brother David Trone obtained the license for and opened the distributorship in Harrisburg, which operated under the name of The Beer and Soda Warehouse, and would later become the Harrisburg Beer World.[1] With the Beer and Soda Warehouse, David Trone introduced a novel approach to the layout, design and operation of beer distributorships in Pennsylvania. In brief, from the consumer's viewpoint, David Trone's approach introduced full customer access to the product by utilizing a "supermarket" style of

1. Originally, this distributorship operated under the name of Beer and Soda Warehouse. The name was changed to Beer World in 1986 and the distributorship is now the Harrisburg Beer World owned by John Trone.

case beer marketing, as well as expanded product choice and extended hours. From the management viewpoint, the approach established quantity purchasing and sales and a particularly effective system of accounting and financial reporting, including the extensive reporting licensees must provide to the Liquor Control Board.[2]

While David Trone operated the Beer and Soda Warehouse, John Trone purchased his brother Robert's interest in the Hanover distributorship in 1984. According to John Trone, by 1985, David Trone decided to establish a "consulting firm" to provide services to beer distributorships. John Trone sold his interest in the Hanover distributorship and bought David's Beer and Soda Warehouse in Harrisburg and David Trone established the consulting firm, now known as Retail Services and Systems, Inc. ("RSS"). The court understood from the testimony at the hearing that David Trone also acquired the trademark for the Beer World around that time and the Harrisburg distributorship was the first to carry that name. Eight other distributorships in Pennsylvania now also operate under the name of Beer World.

John Trone presently pays a monthly fee to David Trone's consulting firm for the use of the Beer World name and the provision of the accounting, marketing and management services to which is ascribed the financial success of Beer World stores.[3] David has similar arrangements with the eight other Beer Worlds in Pennsylvania, one of which is owned by his sister and another of which is owned by his wife. On a number of occasions, through investigations and the filing of charges, the Bureau of Liquor Control Enforcement ("BLCE")[4] have indicated their concern that this arrangement somehow violates provisions of the Liquor Control Code.

### The Statutory Scheme

The Liquor Control Code allows an individual to hold only one distributorship license at any given time. 47 P.S. § 4–438. The Code also requires any applicant for a distributor's license to state and verify by affidavit that the applicant is the only person pecuniarily interested in the business for which the license is sought during the term of the license. 47 P.S. § 4–436(f). The Code makes it a misdemeanor for an applicant to make intentionally false statements on the license application and provides penalties for any conviction thereof. 47 P.S. § 4–436(j). In addition, 47 P.S. § 4–494 makes it a crime to violate § 4–436(f) or any other provision of section 4 of the act.

Neither the Liquor Control Code nor the regulations promulgated under the Code define pecuniary interest. Pennsylvania case law provides no final definition of the term, but has upheld the PLCB's finding that, whatever else it might encompass, such evidence of *de facto* proprietorship as control over employees and day to day operations and finances suffices to establish pecuniary interest under the Liquor Control Code. *See Appeal of E–J Westside Inn Corp.*, 68 Pa.Commw. 323, 449 A.2d 93, 94–95 (1982). The BLCE has declined plaintiff's request to set out an explicit or limiting definition of the term, preferring, apparently, to review questionable arrangements on a case-by-case basis.

**2.** John Trone emphasized at the hearing that David, Robert, John, and June Trone, the siblings involved in the beer distributorship in Pennsylvania, variously hold advanced degrees in business from the Wharton School of the University of Pennsylvania and Carnegie Mellon University. According to John, David Trone devised and implemented the format and operations system for the Harrisburg Beer World, a system that has proved to be extremely profitable.

**3.** John Trone testified that initially, he paid David Trone's RSS in an informal manner, reviewing the services provided and the performance of his business and deciding upon a fair fee. After the BLCE expressed concern about this relationship, he reduced the fee arrangement to writing.

**4.** The BLCE is the enforcement authority under the Liquor Control Code, and is under the supervision of the Pennsylvania State Police. As such, it may bring either administrative or criminal charges against licensees and criminal charges against nonlicensees. Administrative charges are heard by Administrative Law Judges of the Pennsylvania Liquor Control Board (PLCB). Criminal charges by-pass the decisionmaking of the PLCB.

The BLCE has initiated several administrative citations against various Beer World licensees for their failure to provide information to the PLCB about David Trone's involvement with their businesses. As for the plaintiffs at bar, the BLCE initiated a citation against John Trone and the Harrisburg Beer World on June 16, 1989 for allegedly failing to provide information to the PLCB regarding David Trone's involvement in the distributorship. That citation was amended on April 17, 1990, to charge that John Trone had permitted David Trone to exercise substantial control over his business, which constituted an unlawful pecuniary interest. Ultimately, that charge was dropped on February 1, 1991. Counsel for the defendants advised this court that the charge was withdrawn to avoid interference with an ongoing criminal investigation being conducted by a state investigating grand jury into the activities of David Trone and his Beer World clients.[5] At the hearing and in their complaint, plaintiffs indicated their belief that the focus of the investigation is upon David Trone and his relationship with each of the Beer Worlds.[6]

DISCUSSION

Plaintiffs contend that the absence of a definition of pecuniary interest in the statutory, regulatory, or administrative law renders § 4-436(f) constitutionally infirm because the provision is so vague that it fails to give notice of the conduct prohibited and permits arbitrary enforcement by the BLCE, thereby violating plaintiffs' Fourteenth and First Amendment rights. Plaintiffs are particularly concerned that the BLCE may choose to pursue any alleged violation of this section via criminal rather than administrative proceedings. Plaintiffs' request for a temporary restraining order or preliminary injunction is premised on their belief that they will prevail on their constitutional claims and that they will be irreparably harmed if defendants bring a criminal charge against them or are able to threaten them with such charges indefinitely.

Defendants responded, first, that the court should abstain from deciding this case under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Under the *Younger* theory of abstention, a federal court may not adjudicate a constitutional claim if the plaintiff is party to an ongoing state proceeding in which the constitutional claims may be adjudicated, provided the state proceedings have not been brought in bad faith. *Younger*, 401 U.S. at 48–49, 91 S.Ct. at 752–53. *Younger* abstention is mandated when two essential factors are present: there is an adequate remedy available in state court proceedings and, at the same time, the state's interest in the proceedings are important enough that the intrusion of federal jurisdiction would disregard the comity between state and federal governments. *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10–11, 107 S.Ct. 1519, 1525–26, 95 L.Ed.2d 1 (1987). *Younger* contemplates that the accused should first set up and rely upon a constitutional defense in the state proceeding, even though it may require a challenge to the validity of a statute. *Younger*, 401 U.S. at 45, 91 S.Ct. at 751. Although the *Younger* doctrine emerged in application to criminal proceedings, subsequent decisions have liberally expanded it, to the point that abstention is now proper even if the ongoing state proceeding is an administrative one and the plaintiff must wait for state court review

---

**5.** The investigating grand jury is being conducted pursuant to 42 Pa. C.S.A. § 4541 *et seq.*

**6.** Plaintiffs expended considerable effort in demonstrating to the court the extent of the investigations conducted by the BLCE into David Trone's activities. Plaintiffs pointed to various criminal complaints issued against David Trone that were later dropped. While acknowledging the relationship between David Trone and the plaintiffs in this case, and the attendant investigations, the court is con-

strained to remind plaintiffs that the present action was brought in the name of John Trone and his distributorship. Accordingly, the court is concerned with the type and number of actions initiated against this plaintiff, not with those initiated against his brother. Whatever path the court may be inclined to follow in this case, it will not permit the use of John Trone's case to consider the rights of David Trone, who, presumably, may pursue his grievances against the Liquor Control Authorities in his own case.

to have the constitutional claim heard. *Ohio Civil Rights Comm'n v. Dayton Christian School*, 477 U.S. 619, 628–29, 106 S.Ct. 2718, 2723–24, 91 L.Ed.2d 512 (1986).

■ Plaintiffs urge that the investigative grand jury proceeding here is not an ongoing state judicial proceeding for purposes of *Younger* and, therefore, abstention is not permitted. Plaintiffs rely upon *Mohaghan v. Deakins*, 798 F.2d 632 (3d Cir.1986), *vacated on other grounds*, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), in which the Third Circuit Court of Appeals held that a New Jersey grand jury proceeding did not satisfy *Younger* abstention requirements because the jury could not adjudicate the plaintiff's constitutional claims. The Supreme Court vacated *Monaghan* on grounds of mootness and, therefore, the decision holds no binding authority. *Monaghan*, 484 U.S. at 200, 108 S.Ct. at 528. Plaintiffs suggest that the reasoning, nevertheless, remains viable and is consistent with controlling authority.

Defendants' response to plaintiffs' *Younger* brief[7] urged, in essence, that regardless of whether the *Monaghan* reasoning reflects the current position of the Third Circuit, the instant action is distinguishable because Pennsylvania investigative grand jury proceedings differ from the New Jersey proceeding considered in *Monaghan*. Here, defendants argue, the grand jury is supervised by a judge of the court of common pleas, and plaintiffs are entitled to participate in the proceedings with representation by counsel. The supervising judge, the theory goes, can hear the constitutional objections pursuant to plaintiffs' objections to subpoena, interrogation, or other forms of discovery conducted by the investigating grand jury.

The court finds considerable merit in defendants' *Younger* argument and, in reflecting upon additional factors discovered in the course of independent research, is sorely tempted to abstain on *Younger* grounds. One investigated under Pennsylvania's investigating grand jury scheme can begin motion practice as early as the time the district attorney files a notice of submission of a matter to the grand jury. *See, e.g., In re Appeal of Krakower*, 500 Pa. 557, 459 A.2d 304 (1983) (court granted investigatees' motion to quash notice of submission of matter to grand jury). Whether the judge in *Krakower* would have considered constitutional claims in the matter is unclear but this court is aware of no reason why he could not have done so. In any event, the process allows for immediate appeal of any decision by the supervising judge to the Pennsylvania Supreme Court, and there is no question that constitutional defenses to any activities of the investigating grand jury would be heard at that point.

Assuming the supervising judge would hear a constitutional claim in the motion practice available in the investigating grand jury scheme, the court heeds the Supreme Court's assumption that state judges and administrative bodies will interpret state procedural laws and statutory mandates in the light of federal constitutional principles. *See Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (citation omitted). Even if, on the other hand, plaintiffs were forced to wait for an appeal to have constitutional claims adjudicated, under the reasoning of *Ohio Civil Rights Comm'n v. Dayton*, that opportunity to adjudicate constitutional claims would appear to be sufficient for purposes of *Younger* abstention.

The court is concerned, in any event, that during the eighteen months that the administrative charges filed in 1989 were pending against plaintiffs, there *was* an administrative proceeding that would have satisfied *Younger* abstention requirements. The court finds it of no little interest that plaintiffs did not raise their constitutional objections at that time but, rather, brought the constitutional claims in this federal court only after such time as there was no certain basis for *Younger* abstention.

7. Defendants submitted their *Younger* response through oral argument at the hearing. Defendants submitted no written responses or briefs in this matter, relying instead upon the opportunity to give testimony and for oral argument at the hearing.

Thus, the court finds many factors that make *Younger* abstention appear sensible. Given the uncertainty of the law at this time, however, the court will not abstain under *Younger.* There is no question that federal abstention is the exception, rather than the rule, of the exercise of federal jurisdiction, *see Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) and this court is not inclined to extend *Younger* abstention without clear guidance from the higher courts. The court, nonetheless, believes that another theory of federal abstention is appropriate. Although the defendants did not raise the issue of abstention under the other established doctrines, the court could have raised abstention itself sua sponte had not the parties done so and, similarly, may rely on a theory not raised by defendants. *See Bellotti v. Baird,* 428 U.S. 132, 144 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976).

 In addition to *Younger* abstention, federal courts should abstain under the principles announced in *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Stated in the simplest terms, the "paradigm case" for *Pullman* abstention arises where a challenged state statute is susceptible of a construction by the state courts that would moot, avoid, or modify the federal constitutional question. *Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 510, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972). Thus, the federal court should abstain pending the state court determination of pertinent state law. *See Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244. The principles set forth in *Pullman* are grounded in notions of equity, aimed at avoiding any federal-state friction that may be provoked by premature constitutional adjudications of state law by federal courts. *Moore v. Sims,* 442 U.S. 415, 427, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979). In the words of the *Pullman* Court:

> Few public interests have a higher claim on the discretion of a federal chancellor than the avoidance of needless friction with state policies, whether the policy relates to the enforcement of the criminal law ... or the final authority of a state court to interpret doubtful regulatory laws of the state....

*Pullman,* 312 U.S. at 500, 61 S.Ct. at 645.

*Pullman* abstention serves the interest of eliminating the need for federal interpretation of a state statute without the benefit of an authoritative state court interpretation. *Id.* It pays heed to concerns of comity, which counsel a federal court to refrain from entering into a "sensitive area of [state] social policy ... unless no alternative to its adjudication is open." *Pullman,* 312 U.S. at 498, 61 S.Ct. at 644. A parallel aim of *Pullman* abstention is to avoid federal constitutional pronouncements arising from a reading of a state statute that is not binding on the state courts and, thus, may be discredited in the future, thereby rendering the federal court decision advisory and the litigation underlying it meaningless. *Moore,* 442 U.S. at 428, 99 S.Ct. at 2379; *Pennzoil v. Texaco,* 481 U.S. at 11, 107 S.Ct. at 1526.

The Third Circuit identified the "special circumstances" which must be present to justify *Pullman* abstention in *D'Iorio v. County of Delaware,* 592 F.2d 681 (3d Cir. 1978), *overruled on other grounds sub nom., Kershner v. Mazurkiewicz,* 670 F.2d 440, 448 (3d Cir.1982). In *D'Iorio,* a county employee brought an action under 42 U.S.C. § 1983, challenging on due process grounds his dismissal by the county district attorney's office. *Id.* at 684. Plaintiff argued that a provision of his county's home rule charter permitted his termination only upon action by the county council. The district court found the charter provision clear on its face, declined to abstain, and found that the district attorney lacked authority to dismiss the plaintiff. On appeal, defendants argued that *Pullman* abstention was appropriate until the home rule charter had been construed by the courts.

The *D'Iorio* court first identified the threefold threshold criteria that must be present to justify *Pullman* abstention:

> First, there must be uncertain issues of state law underlying the federal constitu-

tional claims brought in the federal court. Second, these state law issues must be amenable to an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the adjudication of the constitutional claims. And third, it must appear that an erroneous decision of state law by the federal court would be disruptive of important state policies.

*Id.* at 686. After the district court determines whether the particular case meets these three criteria, it must make a discretionary determination, based on the weight of these and other relevant factors, as to whether abstention is in fact appropriate. *Id.*

In the case before it, the *D'Iorio* court found that the provision of the home rule charter requiring action by the county council was, apparently, clear on its face. Nevertheless, the court found that other sections of the charter, state law provisions outside the home rule charter, and certain judicial precedent raised questions regarding the district attorney's authority to dismiss and the employee's rights as a county employee. *Id.* at 687–89. It was unclear whether the home rule charter superseded other statutory provisions and how the case law interacted with the statutory law. *Id.* at 689. Thus, the court found the first criterion, an unclear issue of state law, had been met.

In regard to the second criterion, the court found that a state court interpretation that the district attorney had the authority to discharge would eliminate the plaintiff's due process claims based upon improper dismissal procedures. Similarly, the court found that a state court construction might clarify the extent of the employee's property interest in his employment, or identify the procedures mandated to satisfy due process in dismissing him. *Id.* at 689–90. Thus, the second criterion, that constitutional issues might be eliminated or narrowed substantially by abstaining in favor of the state court's interpretation of state law, was satisfied. The court emphasized, as well, that resolution of those issues in the state court would obviate the need to

decide difficult issues of statutory interpretation under 42 U.S.C. § 1983. *Id.* at 690.

Finally, the court found that any decision by the federal district court would "of necessity affect the sensitive area of state control of state law enforcement officials." *Id.* at 691. If the district court erred in its analysis of the district attorney's authority, that error might cloud his continuing authority to effectively supervise his staff, undermine the cooperation of other law enforcement agencies, and disrupt future attempts by county officials and employees to rely upon the rights created under Pennsylvania law. *Id.* Thus, the third criterion, that an erroneous decision might disrupt state policies in the manner that *Pullman* abstention was designed to prevent, was present.

Having determined that the threefold threshold "special circumstances" were present, the court relied upon the Supreme Court's guidance that in the presence of those circumstances, absent significant indications to the contrary, abstention is generally proper. *Id.* at 692. The *D'Iorio* court was persuaded that abstention was appropriate in light of *Boehning v. Indiana State Employees Association*, 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975), where the Supreme Court emphasized that a state statute amenable to two constructions could be interpreted by the state court to avoid any constitutional issue, while a federal court interpretation would be only a "forecast." In addition, the *D'Iorio* court relied upon the Supreme Court's statement that "where the challenged statute is part of an integrated scheme of related constitutional provisions, statutes, and regulations, and where the scheme as a whole calls for clarifying interpretation by the state courts, we have regularly required the district courts to abstain." *D'Iorio*, 592 F.2d at 692 (quoting *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 85, 95 S.Ct. 870, 876, 43 L.Ed.2d 32 (1975)). The court regarded the local home rule charter, state statutory provisions, and state case law as just such a complex and integrated scheme. In light of those "equitable" factors, and the presence of the three threshold criteria, the

court ruled that abstention was appropriate.

More recently, the Third Circuit Court of Appeals examined *Pullman* abstention in *Hughes v. Lipscher*, 906 F.2d 961 (3d Cir. 1990). There, a New Jersey municipal court clerk and her husband, a police officer, challenged the constitutionality of an administrative bulletin issued under authority of the New Jersey court, which prohibited the "appointment of a municipal court clerk who is married to a police officer." The clerk had been employed for thirteen years prior to her marriage. After the plaintiffs married, the court administrator ordered the clerk to recuse herself from any matter involving her husband pending resolution of the applicability of the bulletin. Plaintiffs pursued no state remedies but, rather, filed suit in federal court challenging the bulletin as applied to them on, among others, equal protection and due process grounds. *Id.* at 962–63. The district court ruled on the merits, holding that *Pullman* did not apply because the bulletin was straightforward, which eliminated the need to defer to the state courts for authoritative construction. *Id.* at 963.

On appeal, the Third Circuit vacated the district court's judgment, holding that *Pullman* abstention was required. Applying the three threshold criteria, the court found first, that there was uncertainty as to whether the bulletin applied to the plaintiff clerk, since the bulletin spoke to appointment and did not address continuation in employment when an incumbent married a police officer, or an incumbent's spouse who later becomes a police officer. *Id.* at 966. Thus, the practical application of the bulletin constituted an unsettled issue of state law.

Second, the *Hughes* court ruled that, as applied to plaintiffs, a state court reviewing the bulletin might decide that recusal was a sufficient measure for incumbents who married police officers. Further, the state court could choose to review the bulletin under New Jersey's state constitution or discrimination statutes. Thus, the bulletin was susceptible to an interpretation in the state courts that would eliminate or limit the need for consideration of the federal constitutional claims. *Id.* In regard to the third criterion, the court acknowledged that the prevention of public perception of bias within the judicial system was the state concern to which the bulletin was addressed. The court regarded that concern as an important state policy which would be disrupted by an erroneous interpretation of the bulletin in federal court. *Id.*

Having found the presence of the threshold criteria, the *Hughes* court considered whether other equitable factors mitigated for or against abstention. The court recognized the innumerable pertinent factors that might be presented to the district courts in this discretionary stage of the *Pullman* analysis, citing such examples as the availability of an adequate state remedy, the length of time the litigation has been pending, and the potential impact on the parties from the delay in seeking a state ruling. *Id.* at 964 (citations omitted). The *Hughes* court observed that there would be no undue delay, as the litigation was not long standing. The plaintiffs would not be materially harmed by delay pending a resolution by the state court nor were there adverse consequences beyond the control of the parties. In the court's view, the plaintiff clerk's employment was not seriously threatened and, further, the procedures under which the state bulletin would be reviewed allowed for prompt and fair treatment of the issue. *Id.* at 967. Finally, and perhaps the most significant equitable factor cited, was the principle of comity. As applied to the state court's freedom to control its internal operations, the *Hughes* court held that comity demanded deference from the federal court.

■ Before turning to the case at bar, the court must address one additional facet of the *Pullman* analysis in this discussion. The court is cognizant of the fact that *Pullman* abstention is rarely appropriate in a facial challenge to a statute based upon vagueness. Such facial challenges require plaintiffs to show that there is no set of circumstances under which the statute would be valid. *United States v. Sal-*

*erno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In that situation, no single adjudication by a state court would settle the overriding constitutional difficulty because there would remain a variety of factual situations in which it might be applied. *See Baggett v. Bullitt,* 377 U.S. 360, 378, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964); *Procunier v. Martinez,* 416 U.S. 396, 401 n. 5, 94 S.Ct. 1800, 1805 n. 5, 40 L.Ed.2d 224 (1973); *D'Iorio v. County of Delaware,* 592 F.2d at 692 n. 19.

In "as applied" void for vagueness attacks, however, the resolution in state court of whether the challenged provision applies to the plaintiffs may eliminate the need for constitutional adjudication. *Baggett v. Bullitt,* 377 U.S. at 376–78, 84 S.Ct. at 1325–26; *Procunier,* 416 U.S. at 401 n. 5, 94 S.Ct. at 1805 n. 5. In *Harrison v. NAACP,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959), for example, the Court ruled that abstention was required in regard to a challenge to several state statutes on vagueness and other grounds. The statutes required, *inter alia,* registration of entities engaged in rendering financial assistance in litigation or advocacy in the area of racial relations, and prohibited the instigation of litigation. Violations were punishable as misdemeanors and carried fines and possible revocation of the violator's right to practice law or other professions. *Id.* at 171–73, 79 S.Ct. at 1027–28. Relying on the *Pullman* doctrine, the *Harrison* court ruled that all the statutes were susceptible of a limiting construction in the state courts which might eliminate the constitutional questions. In particular, the court ruled that the vagueness challenge would be mooted if the state court found that the statutes did not apply to the NAACP. *Id.* at 176–77, 79 S.Ct. at 1029–30. *See also Albertson v. Millard,* 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983 (1953) (Court ordered abstention regarding state statute that required, *inter alia,* registration of any Communist organization substantially controlled by the Soviet Union or which acted to further the world communist movement and provided criminal penalties for the failure to so register; limiting definition by state court of terms "Commu-

nist," "Communist Party," and "Communist front organization," would determine the scope of the act and whether it applied to the plaintiffs at hand).

Turning to the instant case, this court believes that it presents the paradigm case for abstention. The plaintiffs' constitutional challenge urges that the Liquor Code's pecuniary interest provision in § 4–436(f) violates their fourteenth amendment due process and first amendment rights because it is so vague that they are unable to tell whether it applies to their business arrangement with David Trone. Plaintiffs emphasized at trial that their challenge was limited to the application of the pecuniary interest provision to John Trone and his Harrisburg Beer World.

Applying the threefold threshold criteria, the court finds that there is an uncertain issue of state law underlying the plaintiffs' federal constitutional claim. There is no authoritative Pennsylvania case law indicating whether § 4–436(f) applies to the arrangement between John Trone's Beer World and David Trone. The statutory scheme regulating the sales of liquor and malt beverages is complex and the state court must be given the opportunity to review it to determine whether the challenged provision applies to plaintiffs.

In regard to the second criterion, a determination by the state court that the provision does not apply to plaintiffs would completely eliminate the plaintiffs' void for vagueness challenge. It is possible that the court will not find the control factors necessary to a finding of pecuniary interest. There is absolutely no point in adjudicating this constitutional claim before a state court decides whether the provision applies to plaintiffs. Since plaintiffs challenge the statute only as applied to them, there would be no need of recurring litigation by these plaintiffs on the constitutional issue.

Third, there is no question that the regulatory scheme put into place by the state of Pennsylvania is of paramount interest to the state. The control of liquor sales and consumption has been expressly reserved to the states by the Twenty-first Amend-

ment to the United States Constitution. The regulation of liquor is absolutely within the police powers of the state, and the pervasive authority of the state over those who would deal in the sale of controlled beverages is well-recognized by Pennsylvania courts. *See Commonwealth, Liq. Control Bd v. Starr,* 13 Pa.Commw. 415, 318 A.2d 763, 766 (1974) *aff'd* 462 Pa. 124, 337 A.2d 914 (1975). Here, there is no question that the Liquor Control authorities are concerned that the plaintiffs' business arrangement somehow violates the law requiring the licensee to reveal whether others have a pecuniary interest in the licensed business, as well the law that each person may hold only one distributor's license at a time. Further, the PLCB and the state courts have indicated that an examination of the legality of business arrangements in the area of controlled beverages interest must be conducted on a case by case basis, under a liberal interpretation of the Liquor Control laws, so as to further the state's interest in protecting the health, safety, morals, and welfare of the public in the area of liquor sales. *See Appeal of E-J Westside Inn Corp.,* 449 A.2d at 95; *Commonwealth, Liq. Control Bd v. Starr,* 318 A.2d at 766. A forecast on the applicability of the provision to plaintiffs at this time, if proven wrong, would undoubtedly disrupt the state's attempt to control the activities of beer distributorship licensees.

The court finds that this case contains the threshold special circumstances required for *Pullman* abstention.[8] Turning to equitable considerations, the court believes there are several that weigh in favor of abstention. First, the duration of the present litigation is short, indeed. Plaintiffs filed this complaint only two weeks ago. There is no undue delay in requiring plaintiffs to seek a declaration of their rights in state court at this juncture. Plaintiffs, however, have expressed deep concern that they will be prosecuted criminally under this provision before it is determined whether it applies to them. It was not shown to the court's satisfaction that the BLCE intends to prosecute these plaintiffs criminally. Previously, the BLCE brought administrative charges under this provision and, despite the presence of an ongoing investigation into the activities of David Trone and his relationship to the Beer Worlds, there is no clear indication that plaintiffs will be prosecuted criminally.

In any event, should plaintiffs be prosecuted in a criminal rather than administrative proceeding before the plaintiffs seek declaratory and injunctive relief in state court, the plaintiffs can raise the constitutional claims in defense and the court will decide them prior to imposing any judgment or sentence. If the state court finds either that the provision does not apply to plaintiffs or that it is unconstitutional as applied, no judgment or sentence under that provision will come to pass. Should the court rule otherwise, however, it will have done so in its capacity as the judicial arbiter of state statutory law. The case law directs this court to assume that the

8. The court draws plaintiffs' attention to the third theory of abstention, derived from *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), which applies to cases in which there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244 (quoting *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Under *Burford* abstention, it is sufficient that exercise of federal review over the issue in the case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244.

Although definable analyses have emerged in regard to the different types of abstention, the United States Supreme Court counsels that the various theories are not "rigid pigeonholes into which federal courts must try to fit cases." *Pennzoil v. Texaco,* 481 U.S. at 11 n. 9, 107 S.Ct. at 1526 n. 9. Rather, these theories underscore a network of important state-federal considerations designed to soften the tensions inherent in the parallel judicial processes present in our federalism. Thus, state interest and comity considerations that may suggest *Younger* abstention is appropriate, but which cannot be given due regard under *Younger* because of the absence of the state proceeding required under that approach, may nevertheless mandate abstention under *Pullman. See id.* In this court's view, *Pullman* abstention is clearly applicable to the case at hand. In addition, although *Burford* abstention is not as clearly fitting, the principles underlying it further counsel abstention.

**1004**

Pennsylvania state courts are capable of and will consider the statute in light of federal constitutional principles. Finally, the court does not regard the nature, arbitrariness, or seriousness of the potential prosecution as so significant that it calls for immediate injunctive relief.

Plaintiffs also have made much of the fact that there is an administrative PLCB decision that supports their position that their business arrangement with David Trone is lawful. The BLCE, they complain, has disregarded that decision. The court, however, sees no greater benefit to its consideration of that fact, as opposed to that of the state court. Pennsylvania courts as a matter of course afford great deference to the decisions of the PLCB, *see Appeal of E-J Westside Inn Corp.*, 449 A.2d at 94–95, and can be expected to do so in this instance. In any event, the state court must decide, first, whether the previous PLCB decision controls the present factual situation. In sum, the court finds that the *Pullman* special circumstances are present here and that other equitable considerations weigh in favor of abstention. Because the court has applied *Pullman* abstention, it will not dismiss but will stay the action pending the outcome of any state court proceedings. As indicated previously, the court does not believe the situation calls for a preliminary injunction. An appropriate order will be entered.